IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
June 6, 2007 Session

## TIMOTHY WADE KEYT v. NANCI SUZANNE KEYT

**Appeal by permission from the Court of Appeals, Middle Section**
**No. 02-174     Vernon Neal, Chancellor**

———————

**No. M2005-00447-SC-R11-CV - Filed December 19, 2007**

———————

We granted the application for permission to appeal in this divorce case to address two issues presented by Husband: (1) whether the increase, if any, in value of his separately-owned stock interest in the family-owned company for which he worked qualifies as marital property; and if so, (2) whether the chancellor correctly assessed the increase in value. Because we find that Husband's employment with the company in which he owned stock did not substantially contribute to the preservation and appreciation of the stock, we reverse the judgment of the Court of Appeals and remand this matter to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11; Judgment of the Court of Appeals Reversed and Case Remanded to the Chancery Court for Putnam County**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER, J., joined. GARY R. WADE, J., dissenting.

Michael W. Binkley, Nashville, Tennessee, for the appellant, Timothy Wade Keyt.

Rankin P. Bennett, Cookeville, Tennessee, for the appellee, Nanci Suzanne Keyt.

**OPINION**

**Factual and Procedural History**

Timothy Wade Keyt ("Husband") and Nanci Suzanne Keyt ("Wife") were married December 16, 1988. Their only child, a son, was born March 20, 1990. During the marriage, Wife did not work outside the home and was the primary caregiver for the child. Husband, who had completed three years of college, was employed by Service Transport, Inc. ("Service Transport"), a trucking company based in Putnam County that was founded and owned, in principal part, by Husband's father.

In May 2002, Husband filed for divorce, alleging irreconcilable differences and inappropriate marital conduct. Wife filed an answer and counter-complaint, also alleging irreconcilable differences and inappropriate marital conduct as grounds for divorce. Wife sought alimony, child support, attorney's fees, and an equitable division of the marital estate, which, she alleged, included the appreciation in value of Husband's shares of stock in Service Transport. Both Husband and Wife sought to be named the primary residential parent of their minor child.

Husband testified at trial that he was first employed by Service Transport in 1979 at the age of twenty-three. He began working as a truck driver and mechanic in Knoxville. After an unidentified period of time in Knoxville, Husband moved to the Memphis terminal and worked in sales for six months. He subsequently moved to Kingsport and assisted in the expansion of company operations by opening another freight terminal. Husband described his role in the expansion by saying that he "drove and picked up freight, and delivered freight, and answered phones." Husband then moved back to Knoxville and helped open another terminal. Approximately five years after beginning his employment with Service Transport, Husband moved to the general office in Cookeville. While there, he learned about freight billing and the general operations of the office.

The same year that Husband moved to the main office in Cookeville, Husband's father and mother ("the Keyts") developed and implemented an estate plan. Under the plan, regular gifts were made to Husband at or near the maximum level of the annual exemption permitted without exposure to a gift tax.[1] The gifts, in the form of cash or Service Transport stock, were made regularly from 1984, approximately four years prior to the parties' marriage, to 2001, and were valued at $20,000 per year.[2] According to the Keyts' Tennessee gift tax returns, the cumulative "full and true value"[3] of Husband's stock, which amounted to 14.24% of the outstanding shares in the company, was $253,229.

As part of the estate plan, the Keyts placed significant restrictions on the stock, thus preventing Husband from having voting privileges or the ability to sell the stock. The limitations also prohibited Husband from encumbering the stock in any way. The Keyts reserved the right to repurchase the stock at book value in the event of Husband's desire to sell his shares or in the event of his death. Husband was, however, assured that he would receive the same price per share as other shareholders if and when the Keyts sold their entire share in the business.

---

[1]Similar gifts of stock were made to an irrevocable trust for a disabled son of the Keyts and to two separate irrevocable trusts for the benefit of each of the Keyts' two grandchildren.

[2]No gifts of stock were made from 1986 to 1988.

[3]See Tenn. Code Ann. § 67-8-107(a) (2006).

2

In 1988, shortly before the parties' marriage, Husband moved to Nashville, where he worked in the company's break bulk center.[4] In 1996 or 1997, Husband moved back to the general office in Cookeville and did "whatever needed to be done." He undertook freight billing, learned the logistics of the business, and performed general office duties which included answering questions for terminal managers about operational issues. He covered for terminal manager(s) during illness, and he also helped open a salvage store for the company in Algood, Tennessee.

During the marriage, Husband acknowledged that he "did a little bit of everything" for the company. Husband denied, however, that he: (1) solicited business in an attempt to make the corporation grow; (2) decided where new terminals would be built or whether additional terminals would be bought; (3) purchased equipment for the company; (4) dealt with accounts receivable; or (5) participated in sales during the marriage. Wife presented no evidence to the contrary.

When asked about Husband's contribution to Service Transport, Wife testified that Husband's responsibilities with the company required him to be out of town three or four nights per week. To support her claim, Ruth Burkes, a frequent visitor in the parties' residence, confirmed that Husband was often gone on business. Neither Wife nor Ms. Burkes testified specifically about what work Husband performed when he was out of town. This discussion about Husband's travel constituted Wife's entire testimony concerning Husband's role in the company.

In 2002, Widney Keyt, Husband's father, and the remaining shareholders agreed to sell their stock in the business. The buyer, STACAS Holdings, Inc., a Delaware corporation, agreed on a gross purchase price of $18,000,000 and, as additional consideration, permitted the shareholders to retain ownership of income producing real estate having a value of approximately $5,000,000. Husband was Service Transport's representative at the closing. There is no proof in the record that he participated in negotiating the contract, however. The percentage of ownership of each shareholder and each shareholder's portion of the gross sale proceeds was as follows:

| Shareholder | Stock Ownership | Share of Proceeds |
|---|---|---|
| The 2002 W.C. Keyt Revocable Trust | 22.83% | $ 4,109,400 |
| Timothy Wade Keyt (Husband) | 14.24% | $ 2,563,200 |
| The 1989 W.C. Keyt Irrevocable Trust - Share A | 12.43% | $ 2,237,400 |
| The 1989 W.C. Keyt Irrevocable Trust - Share B | 22.73% | $ 4,091,400 |
| Dennis Britt | 27.77% | $ 4,998,600 |
| | | $18,000,000 |

---

[4]The extent of Husband's duties at the break bulk center is unclear from the record.

Although the sales contract established that Husband was entitled to $2,563,200 as his share of the gross proceeds, Gary McNabb, a certified public accountant employed at Service Transport, explained that Husband's net proceeds amounted to only $1,283,367.65 because of legitimate deductions based upon indemnities to the buyer. In addition to the net proceeds amount of $1,283,367.65, Husband also retained a 14.24% interest in the real estate reserved from the sale, which was valued at $709,904.

At the conclusion of the trial, the chancellor granted the divorce to Wife based on inappropriate marital conduct, declared Wife the primary residential parent, and awarded her child support of $1,800 per month and alimony *in futuro* of $1,500 per month for the first year and $2,500 per month thereafter. After deducting the reported value on the gift tax returns, $253,229, from the net sales price of Husband's stock, $1,283,367.65, the chancellor found the appreciation in value, $1,030,139, was marital property. Husband's $709,904 retained interest in the real estate reserved from the sale of Service Transport was also classified as marital property.[5] The entire marital estate was valued at $2,221,820, some $1,740,904 of which was the appreciation in the value of the stock and the value of the 14.24% real estate interest retained by Husband from the sale of his stock. Wife was awarded 37.5% of the total marital estate. The court denied Wife attorney's fees because of her considerable participation in the division of the marital estate.

On appeal, Husband argued that the trial court erred in: (1) determining the value of the appreciation of his interest in the corporation; (2) classifying the appreciation of his interest in the corporation as marital property; (3) the type and amount of alimony awarded to Wife; and (4) the amount of child support awarded to Wife. Wife also claimed that the trial court erred in the valuation of the appreciation of Husband's interest in the corporation and that she should have been awarded attorney's fees.[6] The Court of Appeals affirmed the judgment of the trial court, in part, but modified the alimony award from *in futuro*, which is payable indefinitely, to rehabilitative alimony of $2,500 per month extending over an eight year period.

In his application for permission to appeal to this Court, Husband presented only two issues: (1) that the trial court erred by ruling that the increase in the value of his interest in Service Transport was marital property; and (2) that the trial court erred in its stock valuation method. He maintained that his work was limited to tasks that could be performed by the average employee. Husband contended that he was not involved in the managerial or business-planning decisions of the company in that he did not "solely" or "individually" choose routes, negotiate acquisitions, or make purchasing decisions.

---

[5]Although the basis of the trial court's classification of Husband's retained interest in the real estate as marital property is not entirely clear from the record, it appears that the trial court must have determined that there was an increase in the value of the real estate during the course of the marriage and that "each party substantially contributed to [the real property's] preservation and appreciation." See Tenn. Code Ann. § 36-4-121(b)(1)(B) (2005).

[6]Neither party challenged any issues pertaining to residential parenting time or child support.

After our grant of review, Wife filed a brief claiming additional errors both in the modification of the award of alimony *in futuro* and in the denial of her request for attorney's fees for trial and appeal. Wife argued that she should have been awarded alimony *in solido* and claimed an entitlement to attorney's fees under the Uniform Child Custody Jurisdiction and Enforcement Act. Wife also contended that Husband was bound by his admission during discovery that the initial value of his stock was reflected by the amounts shown on the Keyts' gift tax returns; she argued that he was judicially estopped from presenting new evidence regarding the valuation.

## Standard of Review

This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." Herrera v. Herrera, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn R. App. P. 13(d); Union Carbide Corp. v. Huddleston, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. Roberts v. Roberts, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. In re M.L.P., 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing Seals v. England/Corsair Upholstery Mfg. Co., 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. Langschmidt v. Langschmidt, 81 S.W.3d 741, 744-45 (Tenn. 2002).

## Analysis

## Marital Property

Initially, Husband contends that the Court of Appeals erred by affirming the chancellor's determination that the appreciation in Husband's interest[7] in Service Transport qualified as marital

---

[7] By "interest," Husband is referring to both the net sale amount he received when he sold his Service Transport stock and the 14.24% interest he retained in the real estate reserved from the sale. Although Husband sold the separate property - the gifted stock - and received both cash and real property in return, "[p]roperty acquired prior to a final [divorce] hearing that is traceable to separate property constitutes separate property unless it has been gifted to the marital estate or has been transmuted into marital property through inextricable commingling with marital estates." Church v. Church, M2004-02702-COA-R3-CV, 2006 WL 2168271, at *7 (Tenn. Ct. App. Aug. 1, 2006); see also Batson v. Batson, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988); 19 W. Walton Garrett, Tennessee Practice: Tennessee Divorce, Alimony and Child Custody § 15.4, at 334 & n. 26. (rev. ed. 2004) ("Tennessee Divorce"). Because nothing in the record suggests that the real property was "gifted to the marital estate or has been transmuted into marital property through inextricable commingling with marital estates," see Church, 2006 WL 2168271, at *7, Husband's net sale amount and retained interest in the real estate are both classified as separate property, subject to an equitable division only after Wife carries the burden of proving that Husband's separate property fits within the statutory definition of

5

property. In a proceeding for divorce or legal separation, the trial court is authorized, prior to determining the support and maintenance of one party by the other, to "equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1) (2005).[8] The trial court is empowered to do what is reasonable under the circumstances and has broad discretion in the equitable division of the marital estate. See Flannary v. Flannary, 121 S.W.3d 647, 650 (Tenn. 2003). The division of assets is not a mechanical process and trial courts are afforded considerable discretion. Manis v. Manis, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001).

Division of the estate begins with the identification of all property interests. 19 Tennessee Divorce § 15.2, at 321. The classification of property as either marital or separate is next. Flannary, 121 S.W.3d at 650; Brown v. Brown, 913 S.W.2d 163, 166 (Tenn. Ct. App. 1994). Because the courts do not have the authority to make an equitable distribution of separate property, whether separate property should be considered marital is a threshold matter. Cutsinger v. Cutsinger, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). As such, a spouse seeking to include the other spouse's separate property in the marital estate has the burden of proving that the property fits within the statutory definition of marital property. Kinard, 986 S.W.2d at 232.

According to statute, "marital property" includes the following:

(1)(A) [A]ll real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . .

(B) [I]ncome from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if *each party substantially contributed* to its preservation and appreciation . . . .

Tenn. Code Ann. § 36-4-121(b)(1)(A), (B) (2005) (emphasis added).

"Separate property," on the other hand, is in the exclusive ownership of the husband or the wife and is defined as follows:

(2)(A) All real and personal property owned by a spouse before marriage . . . ;

---

marital property. See Kinard v. Kinard, 986 S.W.2d 220, 232 (Tenn. Ct. App. 1998). As such, for purposes of this analysis, when discussing whether Wife carried her burden of proving that Husband "substantially contributed" to the increase in the value of Husband's separate property, Husband's separate property includes both the net sale amount of the Service Transport stock and his interest in the real estate reserved from the sale.

[8]The divorce in this case was granted on August 24, 2004, before the 2005 version of the relevant statute came into effect. Because the language of the cited statutes has not changed from the version in effect in 2004, we cite to the most recent edition.

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage *except* when characterized as marital property under subdivision (b)(1);

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent . . . .

Tenn. Code Ann. § 36-4-121(b)(2)(A)-(D) (2005) (emphasis added).

Thus, increases in the value of separate property during a marriage will not be considered marital property unless both parties "substantially contributed" to the appreciation in the value of the property.[9] Tenn. Code Ann. § 36-4-121(b)(1)(B); Harrison v. Harrison, 912 S.W.2d 124, 127 (Tenn. 1995). While these contributions may be either "direct" or "indirect," Tenn. Code Ann. § 36-4-121(b)(1)(D), they must satisfy two requirements. McFarland v. McFarland, No. M2005-01260-COA-R3-CV, 2007 WL 2254576, at *6 (Tenn. Ct. App. Aug. 6, 2007). First, the contributions must be "real and significant." Id.; Brown, 913 S.W.2d at 167. "Second, there must be some link between the spouses' contributions and the appreciation in the value of the separate property." McFarland, 2007 WL 2254576, at *6; Langschmidt, 81 S.W.3d at 746. Whether a spouse made a "substantial contribution" to the preservation and appreciation of separate property is a question of fact. Sherrill v. Sherrill, 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992).

Because our statute requires the "substantial contribution" of *both* a husband and a wife to the preservation and appreciation of separate property before an increase in value may be considered as a part of the marital estate, the focus in most cases is directed to whether the non-owning spouse's contributions are sufficient to meet the "substantial contribution" standard. In this case, however, because the Husband as the owning spouse has argued that he did not "substantially contribute," we focus first on whether the Husband's contribution as an employee of a company in which he owned

---

[9]Obviously, the party claiming that an increase in value of separate property is marital property must initially demonstrate that an increase in value has occurred. In this case, Wife's proof of an increase in the value of Husband's stock consisted of subtracting the cumulative value of each gift of stock as reflected on the Keyts' Tennessee gift tax returns from the eventual sale price of the stock. That calculation results in an alleged increase in value of $1,030,139. However, Wife's argument fails to take into consideration the fact that the stock at the time it was gifted was, in a very real sense, distinguishable from the stock that was sold to STACAS Holdings, Inc. At the time the stock was gifted, it was heavily restricted. Those restrictions, Mr. McNabb testified, "drastically deflated [the value of the stock] for gift tax purposes." The stock that was sold, however, was unrestricted. Thus, the value of the stock was no longer "drastically deflated." In short, comparing, as Wife does, the value of the restricted stock with the value of the unrestricted stock is akin to comparing apples to oranges. Thus, we are unpersuaded that any actual appreciation in the value of the stock is necessarily accurately reflected by the Wife's method of calculation. Nevertheless, we will assume, for the sake of argument, that the stock did experience some increase in value independent of its change in status from restricted to unrestricted. We make this assumption based on the fact that the company expanded its operations during the time period that the Keyts were gifting stock to Husband.

7

stock is sufficient to meet the standard. If we find that Husband did not "substantially contribute," discussion of Wife's contribution is unnecessary.[10]

Until now, Tennessee courts, when asked to determine whether a spouse's separately-owned stock should be classified as marital property, have found that the owning spouse did not "substantially contribute" only when the increase in the value of stock was wholly unrelated to the contributions of one or both spouses. For example, in Mitts v. Mitts, the Court of Appeals found that the husband's role as general manager of a golf course did not "substantially contribute" to the increase in value of the golf course's stock because, although husband's efforts "certainly contributed, directly or indirectly, to the success of the golf course . . ., the increase in value of the [stock] resulted not from the [success of the] golf course . . . but rather from the attractiveness of the raw land as developable residential property." 39 S.W.3d 142, 146 (Tenn. 2000) (emphasis omitted). In Sherrill, the Court of Appeals held that the husband's stock was separate property because the "record is absolutely void of any proof that either party took *any* action whatsoever to aid in the increase in the value of the [stock]." 831 S.W.2d at 294. Similarly, in McFarland, the Court of Appeals held that husband's family farm was separate property because neither spouse "engaged in efforts that led to the preservation and appreciation of the property." 2007 WL 2254576, at *7. Instead, the court agreed with the trial court's finding that "the *sole* basis for the increase in the value of the real property to the value testified to was market driven forces." Id. (emphasis added). And, in Harrison, this Court held that the increase in the value of the owning spouse's real property from approximately $7,000 to $1.36 million was not the result of the spouses' substantial contributions. 912 S.W.2d at 127. This Court based its decision on the acknowledgment by both parties that "the *sole* cause of the increase in value [of the land] was the construction of [an interstate highway]." Id. (emphasis added). Although the Court's analysis in Harrison focused on the non-owning spouse's contribution and not the owning spouse's, the Court was persuaded to hold that the real property was separate property upon its finding that the sole cause for the increase in the value of the property could not be attributed to the efforts of either spouse.

In each of the cases discussed above, a "substantial contribution" was not found because the increase in the value of the separate property was wholly unrelated to the contributions of either spouse. We do not conclude from these cases, however, that a finding of *any* contribution to the appreciation and preservation of separate property results in an automatic finding that the contribution is substantial. Instead, the facts must be reviewed to determine: (1) whether the contributions were "real and significant;" and (2) whether the real and significant contributions directly or indirectly caused the preservation and appreciation in the value of the separate property.

_____

[10]The Dissent places great emphasis on the fact that Wife "substantially contributed" to the increase in the value of Husband's separate property through her "direct or indirect contribution . . . as homemaker . . . [and] parent or family financial manager." Tenn. Code Ann. § 36-4-121(b)(1)(D) (2005). We do not disagree with the trial court's finding that Wife's efforts in this marriage would be sufficient to constitute a "substantial contribution" to the increase in the value of Husband's separate property. However, because we find that Husband, as the owning spouse of the separate property, did not "substantially contribute" to its increase in value, discussion of Wife's contribution is irrelevant.

For his part, Husband does not deny that he made contributions to Service Transport as an employee. Instead, Husband argues that his contributions as an employee were not substantially related to the appreciation in the value of the Service Transport stock. As Husband argues, "[his] contribution to the corporation was no different than any other employee who worked for Service Transport, or any low or mid-level employee who owns stock in the corporation in which he or she is employed."

In attempting to carry her burden of proving that Husband's separate property is marital, Wife argues that Husband "substantially contributed" to the increase in the value of the stock because it had a gifted value of $253,229 and a net sale proceeds value of $1,283,367.65. She also points out in her testimony that Husband traveled "three or four nights a week" and relies on Husband's testimony that he worked at Service Transport for 23 years, did "a little bit of everything," and did "whatever needed to be done." Wife argues that Husband's many years of experience with Service Transport made him valuable to the business.

Given the parties' positions, this Court does not find the analyses in Mitts, Sherrill, McFarland, and Harrison particularly helpful. Instead, this Court finds it necessary to examine the facts in cases where a "substantial contribution" by the owning spouse was found and determine whether the facts in this case meet those same standards.

In Yates v. Yates, the Court of Appeals determined that Husband's separately owned stock in the family business should be treated as marital property because both spouses "substantially contributed" to its increased value. No. 02A01-9706-CH-00122, 1997 WL 746377, at *2-3 (Tenn. Ct. App. Dec. 4, 1997). The Yates stock, similar to the stock in this case, was from a family-owned, closely-held corporation. Id. at *3. And just like Husband, the owning spouse in Yates worked for his father. Id. Unlike in the instant case, however, the owning spouse in Yates was the director of the company and the head of one of the two divisions within the company. Id. at *3 & n.1. He "was responsible for determining what appliances the company bought each year, purchasing the appliances, and then selling them to customers." Id. at *3.

Although the record in this case contains few details about what Husband did specifically for Service Transport or what titles he may have held, it is clear that he had no involvement in acquiring new customers, in determining shipping routes, or in deciding what equipment to purchase and where to build new terminals. We acknowledge that Husband started a salvage store in Algood, Tennessee, but are unable to find that enough income was generated for the business by selling damaged merchandise to be considered "real and significant."[11]

---

[11]The record indicates that, in the year prior to the sale to STACAS Holding, Inc., Service Transport had a total revenue of approximately $70 million, of which $69.5 million was from freight revenue. Therefore, at best, the salvage store brought in less than 1% of the total revenue for the company.

In Clement v. Clement, the Court of Appeals again found that the increase in the value of the husband's separate property should be considered marital property because both spouses "substantially contributed" to its appreciation and preservation. No. W2003-02388-COA-R3-CV, 2004 WL 3396472, at *11 (Tenn. Ct. App. Dec. 30, 2004). In Clement, the husband owned real property and shares in several real estate firms. Id. The shares and real property, the husband argued, increased in value through no efforts of his own because he was not involved in the day-to-day management of his property. Id. The court disagreed, and stated that, although the husband delegated many of the day-to-day responsibilities, he oversaw the operations of "his wide range of properties and investments." Id. He was an owner of one of the real estate firms. Id. He took an active role in the managing of the properties, firing property managers when necessary, and determining when improvements needed to be made. Id. Additionally, the proof established that husband's "properties maintained their value, or appreciated in value, under the management of Mr. Clement or his agents." Id.

In direct contrast to the husband's claim in Clement, Husband argues in this case that his involvement in Service Transport's day-to-day activities was that of any average employee. Husband had no permanent managerial authority, and he did not oversee the delegation of authority to other employees. Further, although Husband did hire his mother-in-law and father-in-law to work in the Algood salvage store, nothing else in the record indicates that Husband personally was involved in the hiring and firing of employees, as was the case in Clement. And, nothing in the record suggests that Husband was an officer or director of the company, or that he was the head of a division.[12] To the contrary, Husband helped open two of twelve terminals by "dr[iving] and pick[ing] up freight, and deliver[ing] freight, and answer[ing] phones" - tasks that are typically done by low- to mid-level employees. If a terminal manager was out sick, Husband "would go in and work in his place." When asked what he did in the general office, Husband answered, "I pretty much just answered phones from other terminals about questions if they had problems."

Husband's testimony concerning his contributions to Service Transport, which went unchallenged during cross-examination, established that his contributions to Service Transport did not rise to the level of those by the owning spouses in Clement and Yates. Instead, Husband's role in Service Transport was one of filling in and being helpful but not directing the company or contributing to its growth. Nothing in the record demonstrates to us that Husband's contributions substantially led to the increase in the value of the company's stock.

Whether a spouse made a "substantial contribution" to the preservation and appreciation of separate property is a question of fact, and as such, "we are disinclined to disturb the trial court's decision" unless the trial court's findings "lack[] proper evidentiary support or result[] from some error of law or misapplication of statutory requirements and procedures." Herrera, 944 S.W.2d at

---

[12]Although the Dissent, in arguing that Husband was more than a low- to mid-level employee, places great emphasis on the fact that Husband "was the designated representative of Service Transport in the sale" of the business, we find nothing in the record that explains why Husband was the chosen signatory other than the fact that Husband's father lived out of state and the only other known relative in the State is mentally disabled.

389. To this end, to affirm the trial court's findings in this case, the facts presented must demonstrate that both spouses "substantially contributed" to the increase in value of Husband's separate property. The facts in this case do not do so.[13] Accordingly, Husband's stock and any increase in the value of that stock should be treated as separate property.

### Calculation of Stock Value and Rehabilitative Alimony

Our holding that any appreciation in value of Husband's separately-owned stock did not become marital property pretermits the need to address how to calculate the amount of appreciation.[14] Similarly, because our determination significantly affects the total amount of marital property subject to division, it is not possible for this Court to address the issues relating to the award of alimony. Therefore, these issues must be remanded to the trial court for further proceedings consistent with the findings in this opinion.

### Attorney's Fees

Finally, Wife argues that the trial court and the Court of Appeals erred in refusing to award her attorney's fees. Wife gives two reasons: (1) she is entitled to attorney fees under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), see Tenn. Code Ann. §§ 36-6-201 to -243 (2005); and (2) she is entitled to attorney's fees because she would have to "deplete other assets" to pay for the fees that she has incurred throughout the trial, see Kinard, 986 S.W.2d at 236.

As to the first issue, Wife reasons that, because this litigation included a dispute over the custody of the parties' minor child and because she was the prevailing party in the litigation at the trial court and Court of Appeals, there is a presumption that she is entitled to her attorney's fees under the UCCJEA. Wife's sole basis for this argument is the fact that the UCCJEA defines the term "child custody proceeding" to include "proceeding[s] for divorce . . . in which the issue [of custody] may appear," Tenn. Code Ann. § 36-6-205(4) (2005), and states that "[t]he court may award the prevailing party . . . necessary and reasonable expenses incurred . . . during the course of the [custody] proceedings," Tenn. Code Ann. § 36-6-236 (2005).

---

[13]The Dissent argues that the trial court found Wife's testimony to be more credible on the issue of substantial contribution than that of Husband and as such, under this Court's limited scope of review, the trial court's factual findings, "where issues of credibility and weight of testimony are involved," should be given considerable deference. We agree. However, in giving more weight and credibility to Wife's testimony, we still find that the facts do not support the conclusion that Husband "substantially contributed" to the increase in the value of his separate property.

[14]Our holding also pretermits two other issues raised by Wife: (1) that we are bound by the "concurrent" factual findings of the trial court and the Court of Appeals as to the extent and value of the marital estate; and (2) that Husband should be bound by his sworn response to Wife's request for admissions as to the value of the stock at the time of gift. As to the first issue, even if it were not pretermitted, Wife's argument would fail because this Court made clear in our order denying the petition to rehear in In re Adoption of A.M.H., 215 S.W.3d 793, 813-14 (Tenn. 2007), that the concurrent finding statute applies only when the Court of Appeals has filed written findings of fact pursuant to that section, and none appear in this case.

11

Pursuant to Tennessee Code Annotated section 36-6-202 (2005), however, the UCCJEA is to only be "applied to promote its underlying purposes and policies," which are:

(1) Avoid[ing] jurisdictional competition and conflict with courts of *other states* . . .;
(2) Promot[ing] cooperation with the courts of *other states* . . .;
(3) Discourag[ing] the use of the *interstate* system for continuing controversies over child custody;
(4) Deter[ing] abductions of children;
(5) Avoid[ing] relitigation of custody decisions of *other states* . . .; and
(6) Facilitat[ing] the enforcement of custody decrees of *other states*.

Tenn. Code Ann. § 36-6-202(1) to (6) (2005) (emphasis addd). Of these listed "purposes and policies," only one lacks an explicit reference to problems of an inherently interstate nature. Id. at (4). Moreover, we find no other language within the UCCJEA statutory scheme that broadens its application to purely intrastate custody disputes.[15] Consequently, we find that, because it is undisputed that this proceeding involved a purely intrastate custody dispute, the trial court and the Court of Appeals were correct in refusing to award attorney's fees under the UCCJEA.

As to Wife's second argument, Tennessee Code Annotated section 36-5-103(c) (2005) states that whether to award attorney's fees in "any suit or action concerning the adjudication of the custody or the change of custody of any child, . . . both upon the original divorce hearing and any subsequent hearing" is "in the discretion of [the] court." Additionally, in domestic relations cases, attorney's fees, in the form of alimony *in solido*, can be awarded to the economically disadvantaged spouse in a divorce hearing. See Yount v. Yount, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002); Wilder v. Wilder, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001). As Wife correctly argued, trial courts customarily award attorney's fees as alimony *in solido* when the economically disadvantaged spouse would otherwise be forced to deplete assets in order to pay attorney's fees. Koja v. Koja, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000). However, awards of attorney's fees are largely discretionary with the trial court. Owens v. Owens, No. M2005-00639-COA-R3-CV, 2007 WL 957184, at *11-12 (Tenn. Ct. App. Mar. 29, 2007). As such, this Court will only interfere on appeal when a clear abuse of that discretion has occurred. Because this case is being remanded for reconsideration of the marital property and alimony awarded to Wife, we remand this issue to the trial court as well, and express no opinion on whether, if other elements of the award are amended, an award for attorney's fees incurred in the trial court would be warranted. See Eldridge v. Eldridge, 137 S.W.3d 1, 24 (Tenn. Ct. App. 2002). We do, however, deny Wife's request for attorney's fees incurred in conjunction with this appeal.

---

[15]Other courts that have grappled with this issue have reached the same conclusion. See, e.g., Seamans v. Seamans, 37 S.W.3d 693, 696 (Ark. Ct. App. 2001).

## Conclusion

Because we find that Husband's employment with Service Transport did not "substantially contribute" to any preservation and appreciation in its stock value, we hold that any actual increase in the value of this stock remained the separate property of Husband. We reverse the judgment of the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed to Wife, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE