IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 28, 2021 Session

## JULIE C. W. v. FRANK MITCHELL W. JR.[1]

**Appeal from the Circuit Court for Davidson County**
**No. 13D-1587     Philip E. Smith, Judge**

_____

### No. M2019-01243-COA-R3-CV

_____

The Tennessee Supreme Court entered an order vacating our previous judgment in this matter solely with respect to the division of the marital estate and remanding for our further review consistent with its order. We find upon further review that the Circuit Court for Davidson County ("the Trial Court") abused its discretion in dividing the marital estate as it did. We vacate the judgment of the Trial Court on this one issue and remand for a new and equitable division of the marital estate.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Helen Sfikas Rogers, Siew-Ling Shea, and Lawrence J. Kamm, Nashville, Tennessee, for the appellant, Julie C. W.

Gregory D. Smith and Brenton H. Lankford, Nashville, Tennessee, for the appellee, Frank Mitchell W., Jr.

## OPINION

### Background

This matter concerns the divorce of Julie C. W. ("Wife") and Frank Mitchell W. Jr. ("Husband"). Husband, a partner at Bass, Berry & Sims, was awarded roughly 59% of the

_____

[1] The previous opinion in this case dealt with sensitive matters concerning a child, hence we used initials for the parties' surnames. We continue that practice herein.

marital estate. Wife, a part-time hourly staff attorney at Bass, Berry & Sims, was awarded approximately 41% of the marital estate. This was out of a total marital estate of around $11,000,000. Wife appealed, raising several issues including whether the Trial Court erred in its division of the marital estate. In *Julie C.W. v. Frank Mitchell W. Jr.*, No. M2019-01243-COA-R3-CV, 2021 WL 745288 (Tenn. Ct. App. Feb. 26, 2021), we affirmed the judgment of the Trial Court on all issues except its division of the marital estate. On that issue, we vacated and remanded for a "new and equitable division that is as close to a 50/50 division as possible, based upon the specific facts of this case." Pursuant to Tenn. R. App. P. 11, Husband timely filed an application for permission to appeal to the Tennessee Supreme Court our decision regarding the Trial Court's division of the marital estate. Husband argued that, with respect to that issue, we improperly substituted our own judgment for the Trial Court's judgment. On August 11, 2021, the Tennessee Supreme Court entered an order on Husband's application in which it agreed with Husband. The Tennessee Supreme Court stated, in part:

> This Court has repeatedly instructed the appellate courts to give great weight to the trial court's division of marital property and cautioned that they should be disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures. See Larsen-Ball v. Ball, 301 S.W.3d 228, 234 (Tenn. 2010); Keyt v. Keyt, 244 S.W.3d 321, 327 (Tenn. 2007). We find that in its review in this case, the Court of Appeals failed to accord the trial court's decision regarding the division of the marital estate appropriate weight.

The Tennessee Supreme Court thus granted Husband's application for permission to appeal; vacated our judgment solely with respect to the division of the marital estate; and remanded the case for our further review consistent with its order. We now undertake that further review.

## Discussion

The sole issue we address on remand is whether the Trial Court abused its discretion in awarding roughly 59% of the marital estate to Husband and 41% to Wife.

In *Keyt v. Keyt*, 244 S.W.3d 321 (Tenn. 2007), the Tennessee Supreme Court articulated the appellate standard of review for a trial court's division of a marital estate as follows:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's

decision <u>unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures</u>." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings <u>unless there is evidence which preponderates to the contrary</u>. Tenn R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt*, 244 S.W.3d at 327 (emphasis added).

In *Larsen-Ball v. Ball*, 301 S.W.3d 228 (Tenn. 2010), the Tennessee Supreme Court effectively reasserted the deferential standard of review articulated in *Keyt*, stating:

After classifying the divorcing parties' assets as either separate or marital, the trial court must divide the marital estate equitably by weighing the relevant factors enumerated in Tennessee Code Annotated section 36-4-121(c). We give great weight to the trial court's division of marital property and "'are disinclined to disturb the trial court's decision <u>unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures</u>.'" *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007) (quoting *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)).

Tennessee Code Annotated section 36-4-121(c) provides that in making an equitable division of marital property, the trial court shall consider all relevant factors. Because trial courts have broad discretion in dividing the marital estate, the division of marital property is not a mechanical process. *Flannary,* 121 S.W.3d at 650. Rather, the trial court should weigh the most relevant factors in light of the facts of each case. *Tate v. Tate*, 138 S.W.3d 872, 875 (Tenn. Ct. App. 2003). We review the trial court's findings

of fact de novo with a presumption of correctness and honor those findings unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008). When issues of credibility and weight of testimony are involved, we afford considerable deference to the trial court's findings of fact. *Keyt*, 244 S.W.3d at 327.

*Larsen-Ball*, 301 S.W.3d at 234-35 (footnote omitted, emphasis added).

In a published Tennessee Court of Appeals opinion authored by then-Judge and later-Justice William C. Koch, Jr., this Court discussed the standard of review at issue as follows:

The approach to dividing a marital estate should not be mechanical, but rather should entail carefully weighing the relevant factors in Tenn. Code Ann. § 36-4-121(c) in light of the evidence that the parties have presented. *Flannary v. Flannary*, 121 S.W.3d at 650-51; *Tate v. Tate*, 138 S.W.3d 872, 875 (Tenn. Ct. App. 2003); *Kinard v. Kinard*, 986 S.W.2d at 230. Trial courts have broad discretion in fashioning an equitable division of marital property, *Jolly v. Jolly*, 130 S.W.3d 783, 785 (Tenn. 2004); *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983), and appellate courts must accord great weight to a trial court's division of marital property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Batson v. Batson*, 769 S.W.2d 849, 859. Accordingly, it is not our role to tweak the manner in which a trial court has divided the marital property. *Morton v. Morton*, 182 S.W.3d at 834. Rather, our role is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent with logic and reason, and whether the trial court's division of the marital property is equitable. *Jolly v. Jolly*, 130 S.W.3d at 785-86; *Gratton v. Gratton*, No. M2004-01964-COA-R3-CV, 2006 WL 794883, at *7 (Tenn. Ct. App. Mar. 28, 2006) (No Tenn. R. App. P. 11 application filed); *Kinard v. Kinard*, 986 S.W.2d at 231.

*Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007) (emphasis added).

Tennessee law reflects that trial courts have considerable discretion in dividing the marital estate, although that discretion is not unbounded. Discretion may be abused. Abuse of discretion has been defined variously over time.[2] In 2020, our Supreme Court, in the context of reviewing a ruling on a motion to alter or amend, applied the following abuse of

---

[2] Judge Clement's scholarly opinion *Gooding v. Gooding*, 477 S.W.3d 774 (Tenn. Ct. App. 2015) traces the evolution of the abuse of discretion standard of review.

discretion standard:

> This Court has described the abuse of discretion standard in some detail:
>
>> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. Thus, it does not permit reviewing courts to second-guess the court below, or to substitute their discretion for the lower court's. The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny.
>>
>> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.
>
> *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted); *see also BIF, a Div. of Gen. Signals Controls, Inc. v. Serv. Const. Co.*, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (citations omitted) ("The standard conveys two notions. First, it indicates that the trial court has the authority to choose among several legally permissible, sometimes even conflicting, answers. Second, it indicates that the appellate court will not interfere with the trial court's decision simply because it did not choose the alternative the appellate court would have chosen.").
>
> *Lee Medical* provided the framework for determining whether a trial court has properly exercised its discretion:
>
>> To avoid result-oriented decisions or seemingly

-5-

> irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions.
>
> *Lee Med.*, 312 S.W.3d at 524-25 (citing *Flautt & Mann v. Council of City of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF*, 1988 WL 72409, at \*3)); s*ee also Vodafone Americas Holdings, Inc. & Subsidiaries v. Roberts*, 486 S.W.3d 496, 514 (Tenn. 2016).

*Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305-06 (Tenn. 2020). We note at least one other relatively recent formulation of the abuse of discretion standard of review, this time set out by the Tennessee Supreme Court in the context of reviewing a ruling on the admissibility of evidence: "A trial court abuses its discretion only when it applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining. The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court." *Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 294 (Tenn. 2017) (internal citations and quotation marks omitted).

In its March 2019 Memorandum and Final Decree of Divorce, the Trial Court examined each of the statutory factors under Tenn. Code Ann. § 36-4-121(c) with respect to the division of the marital estate:

> (c) In making equitable division of marital property, the court shall consider all relevant factors including:
> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage

earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable. Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence;

(11) The amount of social security benefits available to each spouse; and

(12) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2017).

The Trial Court made numerous findings in the course of its analysis of each statutory factor, to wit: that the parties' marriage was neither of short or long duration; that both parties are healthy; that neither party has substantial debt; that although Husband earns more than Wife—$1.7 million to approximately $153,000 (though Wife stipulated that she is capable of earning $192,750 annually)—Wife has a high earning capacity; that the "issue of most concern, at least to [Husband], is the parties' 16 year age difference; he is 60, she is 44"; that the parties were both independently educated; that a division of labor existed in the marriage whereby Husband earned more money and Wife took care of the children a majority of the time; that "[Wife] has testified that she will never be able to earn as much money as [Husband] earns, and the Court does not doubt this to be true"; that "[Husband] is 60, and [Wife] is 44. He earns substantially more per year but, in all likelihood, she has several more earning years ahead of her. Further, any money she invests now will have longer to grow before she must begin to withdraw it"; that each party contributed to the acquisition, preservation and appreciation of the marital estate; that Husband dissipated

-7-

some $5,000 on paramours; that the parties' separate property consists largely of the pre-marital values of certain accounts and the pre-marital equity in the parties' marital home which [Husband] purchased before the parties married; that the parties presented "very little proof" regarding their respective estates at the time of their marriage; that "[e]ach party earns a significant income, though [Husband] earns approximately eight and a half times what [Wife] earns"; that the parties' incomes and propensity to save money afford them the opportunity to begin their newly-divorced lives with few if any financial concerns; that "the parties' single largest asset is [Husband's] Bass Berry & Sims retirement account, which is a tax-deferred account… [a]ny funds received from this account by either party will be taxable when the parties withdraw funds from the account"; that factor (10) does not apply here; and that Husband will receive monthly Social Security Benefits in the "high $2,000s" if he begins drawing those benefits at age 62 but there was no proof as to how much Wife will draw. Continuing our review of the Trial Court's extensive factual findings, the Trial Court stated further:

> The parties are very fortunate in that, as noted above, they have a substantial marital estate to divide between them. Barring any unforeseen calamity, each will have the resources to continue living as single people largely as they did during their marriage.
> As the Court analyzed each of the factors set forth in Tenn. Code Ann. 36-4-121(c), nothing stands out that requires the Court to award a vastly larger share of their estate to one party or the other. [Wife] and [Husband] are both healthy, active, high income earners, with little to no debt and a substantial marital estate. The two factors where there is the most discrepancy are the parties' ages and their incomes. While the Court has recognized that [Wife] makes a very good living, the Court cannot ignore the fact that [Husband] makes nearly $1.7 million a year to her $192,000. The Court heard testimony that [Wife] began her career on a partner track at Bass Berry & Sims, and that she earned partnership credit even when she began working part-time. She relinquished her partnership track when she returned to work after a two-year leave of absence. The Court heard testimony that [Husband] did not want [Wife] to work part-time, or not to work at all, but it is undisputed that, ultimately, [Husband] agreed both to [Wife's] leave and to her part-time schedule. The Court further has recognized that [Husband] also benefitted from this arrangement. [Wife's] reduced work schedule meant she was able to care for their home and their children — including [Husband's] children from his prior marriage — while [Husband] worked or, as [Wife] testified, played golf.
> The other large disparity between [Wife] and [Husband] is their ages. [Wife] is 44; [Husband] is 60. [Husband] testified that he does not intend to continue practicing law for much longer, and that his "best years" are likely

-8-

behind him (though the Court notes that the proof shows his best years have been the most recent ones). [Husband] testified that Bass Berry & Sims' mandatory retirement age is 70, but that some lawyers at the firm come to the office after they are well into their 80s. [Husband] said that Mr. Bass is 108 years old and still comes to the office. The Court appreciates that some people may wish to work their entire lives, but certainly does not hold anyone to this expectation. The simple fact of the matter is that [Wife] is 16 years younger than [Husband]. Realistically speaking, she has many more years than [Husband] left to work and to earn income on investments before she retires.

[Wife] has attempted to counter [Husband's] argument by pointing out that in addition to his higher income, her investment account earns a far smaller return than [Husband's] earns. The Court heard testimony that [Wife's] 3.6% return is far below what is expected of even a moderate-risk investment account. The Court will not hold the fact that [Husband's] investments earn more than [Wife's] does against him — especially when the parties control their own investment accounts.

[Husband] has asked the Court to consider their age difference in awarding [Husband] a larger share of the marital estate. [Wife] points to their income disparity as the reason why she should receive more. The Court is somewhat persuaded by [Husband's] argument that he should receive a greater share of the parties' retirement assets — though not necessarily to the degree [Husband] wishes. No matter how you look at it, [Husband] will retire before [Wife] does, and he will be drawing down, rather than contributing to, his retirement funds. Further, these funds are tax-deferred, and [Husband] will have to pay taxes when he begins to withdraw them. As such, they are not a dollar-for-dollar equivalent to the parties' non-retirement assets. Based on these considerations, the Court believes [Husband] should receive a larger share of the parties' retirement assets. The Court will offset this award, however, by awarding [Wife] a larger share of the parties' non-retirement "liquid" assets. [Wife] may then spend or invest any or all of that money as she sees fit.

\*\*\*

With all of these considerations in mind, including the facts and circumstances of the parties as measured against the factors set forth in Tenn. Code Ann. § 36-4-121(c), the Court has equitably divided the parties' marital estate. A chart outlining the Property Division is attached as **Exhibit C** to this Memorandum and Final Decree of Divorce and incorporated by reference.

The Court recognizes that, at first blush, it appears [Husband] is receiving a larger share of the marital estate. The Court has carefully considered the nature of the parties' assets in its division, however, and has awarded [Husband] a larger share of the parties' retirement assets, and [Wife] a larger share of the parties' "liquid" assets. As discussed throughout portions of this Memorandum, the retirement assets are tax-deferred and are not equivalent to cash assets. The Court has taken care to award [Wife] a healthy share of the parties' retirement assets, but has awarded her a large enough share of their cash accounts that she can spend them, save them, or invest any portion of them for her future. The Court also has taken into account that it is awarding both parties 529 accounts which are credited in their "award" columns, but which they will not use for themselves. [Husband's] share of these accounts is far larger than [Wife's]. The Court also notes that, while [Husband] has a larger separate estate, both parties' separate estates are relatively insubstantial and, for the most part, inaccessible.

This Court has stated that the justness of a particular division of marital property depends on its final results. *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990). "[W]e will ordinarily defer to the trial judge's decision [regarding the division of a marital estate] unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence." *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998) (citations omitted).

With the pertinent law elucidated, we proceed with reviewing the issue at hand. Applying the abuse of discretion standard of review set forth by the Tennessee Supreme Court in *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010) as relied upon more recently by the Tennessee Supreme Court in *Harmon v. Hickman Cmty. Healthcare Servs., Inc.* as set out above, we consider whether the Trial Court applied an incorrect legal standard, reached an illogical or unreasonable decision, or based its decision on a clearly erroneous assessment of the evidence. *See Harmon*, 594 S.W.3d at 305 (quoting *Lee Med., Inc.*, 312 S.W.3d at 524).

Regarding *Lee Medical* factor (1), the Trial Court examined each of the relevant statutory factors. The Trial Court made detailed findings in the course of its analysis. We are satisfied that the Trial Court applied the correct legal standard.

*Lee Medical* factor (2) concerns whether the Trial Court reached an illogical or unreasonable decision. A 59/41 division of a marital estate is not an inherently illogical or unreasonable outcome. Heavily imbalanced divisions of a marital estate may sometimes be equitable under the circumstances of a particular case. Divisions of a marital estate are

fact-intensive, hence the considerable deference given to trial courts in rendering such divisions. In this context, whether the Trial Court's division of the marital estate is illogical or unreasonable depends upon an assessment of the evidence in the record, implicating factor (3). The Trial Court discussed all the statutory factors and ended up identifying two factors as being the most discrepant between the parties—those concerning age and income. The Trial Court then found: "No matter how you look at it, [Husband] will retire before [Wife] does, and he will be drawing down, rather than contributing to, his retirement funds"; "these funds are tax-deferred, and [Husband] will have to pay taxes when he begins to withdraw them"; "the Court believes [Husband] should receive a larger share of the parties' retirement assets. The Court will offset this award, however, by awarding [Wife] a larger share of the parties' non-retirement 'liquid' assets." The Trial Court stated: "[A]t first blush, it appears [Husband] is receiving a larger share of the marital estate." Indeed, it does appear that way because Husband is receiving a larger share of the marital estate. That is so despite these other findings made by the Trial Court: that Husband earns more than Wife—$1.7 million to approximately $153,000 per year (although the Trial Court found she *could* earn $192,750 per year); that "[Wife] has testified that she will never be able to earn as much money as [Husband] earns, and the Court does not doubt this to be true"; and that "[Husband] earns approximately eight and a half times what [Wife] earns."[3]

If income is to be accorded more weight than age, a larger award of the marital estate to Wife would be in order as she is sharply financially disadvantaged relative to Husband. If age is to be accorded more weight than income, that would favor a larger award of the marital estate to Husband since he presumably has fewer working years remaining than Wife. Since the Trial Court awarded roughly 59% of the marital estate to Husband despite his pronounced financial advantage, it is clear by implication that the Trial Court placed the most weight on age as a factor. While the Trial Court's decision comes ultimately under the ambit of abuse of discretion review, the Trial Court's finding that age is the most significant factor is an evidentiary finding subject to our review under Tenn. R. App. P. 13(d). *See Baggett v. Baggett*, 422 S.W.3d 537, 550 (Tenn. Ct. App. 2013) ("[W]e are unable to conclude that the property distribution was inequitable or that the trial court erred in its distribution of the marital property. The evidence simply does not preponderate against the trial court's division of the parties' property").[4]

We find that the evidence preponderates against the Trial Court's finding that a 59% to 41% division of the marital estate is an equitable division. The Trial Court's finding is illogical in view of the Trial Court's other findings regarding the parties' vastly discrepant

---

[3] Using the $192,750 found by the Trial Court, it actually is closer to 9 times rather than 8 and a half times as it is 8.82 times.

[4] If the Trial Court's decision were a conclusion of law rather than an evidentiary finding, it would be reviewed *de novo* without any presumption of correctness. *See S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

incomes. The evidence does not preponderate against these latter findings as to the parties' respective incomes, and they do not appear to be in serious dispute. Husband is a partner at Bass, Berry & Sims. Wife is a staff attorney at the same firm who made considerable professional sacrifices for the marriage in the course of her career. Even if Wife works to age 70 earning the income the Trial Court found she could earn (but had not), Husband would still earn millions more than she will if he also retires at age 70, the age used by the Trial Court. Thus, if the two most discrepant factors as found by the Trial Court are age and income, and Husband's being 16 years older than Wife and that much closer to retirement does not alter his far superior earning capacity and ability for future acquisitions of capital assets as well as income, it was illogical for the Trial Court to accord the factor of age more weight than income in dividing the marital estate. Based on the Trial Court's own findings, Wife never will even remotely approach Husband's earning power or ability to acquire capital assets and income comparable to what Husband can even if she works 16 years longer than he does.[5] This is true regardless of the relative liquidity of Wife's assets. Husband's means, and prospective means, dwarf hers.

We recognize that the Trial Court considered the great disparity in income between the parties and awarded Wife a greater share of the liquid assets. Based on our calculations, after subtracting the tax-deferred assets, 529 accounts, and children's savings accounts, Wife comes away with around $500,000 more in liquid assets than Husband. We accord the Trial Court's attempted solution due weight. However, due weight must yield to mathematics and equitableness so as not to reach an illogical, unreasonable decision that is based on a clearly erroneous assessment of the evidence. *See Harmon*, 594 S.W.3d at 305 (quoting *Lee Med., Inc.*, 312 S.W.3d at 524). Based on nothing but the parties' respective ages, Wife received a smaller portion of the marital estate despite the fact Husband earns 8.5 to 9 times more than she does.

The Trial Court also found that "both parties' separate estates are relatively insubstantial…" The Trial Court made this finding despite finding elsewhere that Husband's separate estate is worth $812,658 while Wife's is worth $55,751.50. To put those figures in perspective, the total marital estate at issue is around $11,000,000. In such a context, almost $900,000—the vast majority of which belongs to Husband—cannot reasonably or logically be regarded as "insubstantial." The evidence preponderates against the Trial Court's finding that the parties' separate estates are insubstantial.

In light of the foregoing, to award Husband some 59% of the marital estate is

---

[5] Using the retirement age of 70 as used by the Trial Court for both parties and the income numbers found by the Trial Court, Husband will earn $11,988,500 more than Wife even with her working 16 years more than Husband. If one compares what the parties will earn over the next ten years until Husband reaches age 70 as found by the Trial Court, Husband will earn $15,072,500 more than Wife for that same ten year period.

inequitable as the evidence preponderates against this being an equitable division and is based on a clearly erroneous assessment of the evidence. Such an award only exacerbates the yawning financial gap between the parties, and no other factor is cited to justify such a result. The manner in which the Trial Court weighed the statutory factors found at Tenn. Code Ann. § 36-4-121(c) is consistent with neither logic or reason.

Our review of a trial court's division of a marital estate is deferential, but we have a role nevertheless. "[O]ur role is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent with logic and reason, and whether the trial court's division of the marital property is equitable." *Owens*, 241 S.W.3d at 490 (emphasis added). The Tennessee Supreme Court has stated: "We give great weight to the trial court's division of marital property and 'are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.' " *Larsen-Ball,* 301 S.W.3d at 234 (quoting *Keyt*, 244 S.W.3d at 327) (emphasis added). The standard is thus that we defer to a trial court's division of a marital estate *unless* one of these aforementioned conditions exists; we have found that certain of these conditions do exist here. We expressly find that the Trial Court reached an illogical and unreasonable decision with regard to the marital estate. We expressly find further that the Trial Court made a clearly erroneous assessment of the evidence. We expressly find further still that the Trial Court's distribution of the marital estate lacks proper evidentiary support.

The *Lee Medical* abuse of discretion analysis contains additional layers of review. To the extent these additional considerations may differ from the ones already addressed, we next address whether the factual basis for the Trial Court's decision is properly supported by evidence in the record, whether the Trial Court properly identified and applied the most appropriate legal principles applicable to the decision, and whether the Trial Court's decision was within the range of acceptable alternative dispositions. *See Harmon*, 594 S.W.3d at 305-06 (quoting *Lee Med., Inc.*, 312 S.W.3d at 524-25).

The Trial Court properly identified and applied the appropriate legal principles in its decision; it examined each of the relevant statutory factors and made detailed factual findings accordingly. The second additional *Lee Medical* factor is satisfied. However, the Trial Court's decision does not meet either the first or third of these additional *Lee Medical* factors. As discussed above, the Trial Court's decision is not supported by the evidence in the record. In addition, having concluded that the Trial Court's decision lacks evidentiary support and is contrary to logic and reason, we necessarily find that the Trial Court's decision falls outside the range of acceptable alternative dispositions. To find otherwise would mean that an illogical and unjust decision that is unsupported by the evidence is an "acceptable alternative disposition," which is absurd. As a final matter, to the extent some

formulations of the abuse of discretion standard of review ask whether the lower's court's decision 'caused an injustice to the complaining party,' we expressly find that the Trial Court's decision with respect to the marital estate causes an injustice to Wife. *See Borne*, 532 S.W.3d at 294.

In conclusion, we find that the Trial Court abused its discretion in dividing the marital estate in the manner in which it did. Respectfully, the Trial Court's division of the marital estate is unsupported by evidence in the record, represents an erroneous assessment of the evidence, is contrary to logic and reason, and is unjust. *See Harmon*, 594 S.W.3d at 305-06 (quoting *Lee Med., Inc.*, 312 S.W.3d at 524-25); *Borne*, 532 S.W.3d at 294. In so finding, we do not substitute our judgment for that of the Trial Court. Rather, we apply the standard of review articulated by the Tennessee Supreme Court in *Keyt* and *Larsen-Ball*. We note that with the exceptions as to the Trial Court's finding that the parties' "separate estates are relatively insubstantial…." and the Trial Court's ultimate finding that a 59% to 41% is a just and equitable division of the marital estate, we have used the findings of the Trial Court as the evidence does not preponderate against these other findings. We vacate the Trial Court's division of the marital estate and remand for a new and equitable division of the marital estate.

## Conclusion

The judgment of the Trial Court as to the division of the marital estate is vacated, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and collection of the costs below. The costs on appeal are assessed against the Appellee, Frank Mitchell W., Jr.

s/ D. Michael Swiney
D. MICHAEL SWINEY, CHIEF JUDGE

-14-