IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 4, 2009 Session

## REX HUBBARD v. HELEN LOUISE HUBBARD

**Appeal from the Circuit Court for Franklin County**
**No. 15605-CV     Thomas W. Graham, Judge**

_____

**No. M2009-00780-COA-R3-CV - Filed September 28, 2010**

_____

Wife argues on appeal that the trial court erred by awarding her a little more than half the parties' assets and alimony of $3,000 per month for 7 years while the physician Husband's earning capacity is considerably more than Wife's. During the parties' almost forty (40) year marriage, Wife reared 7 children and focused primarily on the family finances and not her individual finances. We agree with Wife and award her an additional $300,000 in marital assets. The matter is remanded to the trial court to determine reallocation of assets in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded**

PATRICIA J. COTTRELL, P.J.,M.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Clinton H. Swafford, Winchester, Tennesse; Russell Anne Swafford, Dunlap, Tennessee, for the appellant, Helen Louise Hubbard.

John Mark Stewart, Winchester, Tennessee, for the appellee, Rex Hubbard.

### OPINION

The parties to this divorce proceeding appeal the trial court's award of alimony to Wife and division of property between the parties.

In January of 2006, Rex Hubbard ("Husband") filed for divorce alleging irreconcilable differences. His wife, Helen Louise Hubbard ("Wife"), counter-claimed for divorce alleging inappropriate marital conduct. The trial court held a hearing in January of 2009 and a Decree

of Divorce was entered on January 5, 2009. After both parties filed motions to alter or amend, the trial court entered an Order Altering and Amending the Decree of Divorce on March 24, 2009, which slightly adjusted the marital property division.

The parties were married in 1970 upon graduation from college. During the course of the marriage, the parties had 7 children, all of whom were adults at the time of the divorce. Husband became a physician and Wife received a Masters in Business Administration and became a certified public accountant ("CPA"). After Husband completed his internship and residency in Texas, the parties moved to Winchester, Tennessee, in 1978 where Husband began his medical practice specializing in obstetrics and gynecology.

It is not disputed that during the marriage Husband was a successful physician, earning $500,000 in some years. Wife, on the other hand, managed the household, the family finances and reared 7 children. The parties agreed that while Husband pursued his career providing for the family financially, Wife would care for the home and family. In addition, Wife assisted in the management of Husband's practice - paying bills, filing tax returns, and keeping the books. Each party concedes the other party performed his or her roles well. Husband credits Wife's financial acumen with the substantial assets the couple accumulated during their marriage. In addition to these responsibilities, Wife did some work as a CPA from their home and served on the board of a bank. In 2007, for example, she earned $9,693 from her practice.

After almost 36 years of marriage, the couple separated in January of 2006, reconciled for a period, and divorced in January of 2009. Thereafter, Husband moved to Louisiana where his twin brother lives and was employed by a hospital there where he earned $216,000. At the time of trial, both parties were approximately 58 years old.

## I. TRIAL COURT DECISION

The trial court found, upon stipulation of the parties, that the primary fault for the break up of the marriage was husband's inappropriate conduct based on adulterous affairs. After deciding whether certain property constituted marital property and its value, the trial court awarded Wife $1,733,349.50 in marital assets, and Husband was awarded $1,519,373.36 in the marital assets.

With regard to alimony, the trial court found that Wife's need for spousal support in her Income and Expense Statement of $120,000 per year, in addition to her annual income of $30,000 from fees and expenses, was overstated. After deducting $44,000 from her alleged needs, the trial court arrived at the conclusion that her unmet financial needs, after

taking into account her income of $30,000 per year, totaled $76,000.[1]  At arriving at its alimony figure, the trial court reasoned thusly,

> The Defendant is a Masters Degree CPA with banking, investment and tax preparation experience.  Based on the testimony of Defendant's daughter a person with Defendant's qualifications is imminently employable in the area at a salary of at least Forty Thousand ($40,000) Dollars per year.  Based on the above and with further consideration of the One Million Seven Hundred Seventy-Three Thousand Nine Hundred Forty-Four and 52/100 ($1,773,944.52) Dollars in mostly liquid assets granted herein and in further consideration of the Defendant's separate property equaling at least Four Hundred Twenty-Three Four Hundred Seventy-Eight and 12/100 ($423,478.12) Dollars, this Court finds the Defendant is entitled to receive transitional alimony of Six Thousand Three Hundred Thirty-Three and 33/100 ($6,333.33) Dollars per month for a period of six (6) months for the purpose of allowing her sufficient time to become fully employed.  Following the period of transitional alimony the Plaintiff shall pay the Defendant the sum of Three Thousand ($3,000.00) Dollars per month until the Defendant reaches the age of sixty-six (66) years.

In its later order amending some aspects of the property distribution, the trial court declined to alter its alimony decision.

> The Court denies any change to alimony and notes same is supported by the findings in the Decree and is further supported by the fact that the total support needed, $106,000.00, [$76,000 plus her income of $30,000] is almost exactly one-half of the Plaintiff's current $216,000.00 annual income.  The award of alimony therefore meets both the need for support as well as the post-divorce standard of living expected to be available to the other spouse. [*See* T.C.A. § 36-5-121(f)].

Both parties appeal the division of marital property and alimony award.

---

[1] There are varying ways to arrive at this figure but the basics are Wife put her need at $150,000, the trial court found $44,000 of this need was unsupported so her real need totaled $106,000.  After taking into account her earnings of $30,000 per year, Wife is left with financial needs totaling $76,000 per year.

## II. PROPERTY DIVISION AND ALIMONY

### A. Division of Marital Property

After identifying the marital property, the trial court is charged with equitably dividing, distributing, or assigning the marital property "without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1). The court is to consider all relevant factors in its distribution, including those listed in Tennessee Code Annotated § 36-4-121(c). *Jolly v. Jolly*, 130 S.W.3d 783, 786 (Tenn. 2004); *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). The court may consider any other factors necessary in determining the equities between the parties, Tenn. Code Ann. § 36-4-121(c)(11), except that division of marital property is to be made without regard to marital fault. Tenn. Code Ann. § 36-4-121(a)(1). The factors the courts should consider in making a division of the marital estate include:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contributions by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation, or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled his or her role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset and other reasonable expenses associated with the asset; and

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tennessee Code Annotated § 36-4-121(c).

The trial court's task is to make an equitable, or fair, distribution of property. "The trial court is empowered to do what is reasonable under the circumstances and has broad discretion in the equitable division of the marital estate." *Keyt v. Keyt*, 244 S.W.3d 321, 328 (Tenn. 2007) (citing *Flannary*, 121 S.W.3d at 650). Because the division of marital property is "not a mechanical process," and because decisions regarding division of marital property are fact-specific and many circumstances surrounding the property and the parties play a role, a trial court has a great deal of discretion concerning the manner in which it divides marital property. *Keyt*, 244 S.W.3d at 328; *Jolly*, 130 S.W.3d at 785; *Flannery*, 121 S.W.3d at 650; *Smith v. Smith*, 984 S.W.2d 606, 609 (Tenn. Ct. App. 1997)).

As a general matter, reviewing courts will evaluate the fairness of a property division by its final results. *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007); *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990). Further, "unless the court's decision is contrary to the preponderance of the evidence or is based on an error of law, we will not interfere with the decision on appeal." *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002) (citing *Goodman v. Goodman*, 8 S.W.3d 289, 298 (Tenn. Ct. App. 1999)). Thus, appellate courts ordinarily defer to the trial court's decision unless it is inconsistent with the factors in Tenn. Code Ann. §36-4-121(c) or is not supported by a preponderance of the evidence. *Jolly*, 130 S.W.3d at 785-86.

**B. Alimony**

With regard to alimony, trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *Broadbent v. Broadbent*, 211 S.W.3d 216, 220, (Tenn. 2006); *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). There are no hard and fast rules for spousal support decisions. *Manis v. Manis*, 49 S.W.3d 295, 304 (Tenn. Ct. App. 2001). Spousal support decisions require a careful balancing of the relevant factors, and the determinations hinge on the unique facts of each case. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).

Accordingly, appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to public policies reflected in applicable statutes. *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Nelson v. Nelson*, 106 S.W.3d 20, 23 (Tenn. Ct. App. 2002). Our role is to determine whether the award reflects a proper application of the relevant legal principles and that it is not clearly unreasonable. *Bogan*, 60 S.W.3d at 733. When the trial court has set forth its factual findings in the record, we will presume the correctness of those findings so long as the evidence does not preponderate against them. Tenn. R. App. P. 13(d); *Bogan*, 60 S.W.3d at 727; *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn.2000).

Tennessee Code Annotated § 36-5-121(i) directs the courts to consider all relevant factors "[i]n determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment." The statute lists a number of nonexclusive factors to be considered.[2] While one factor is "the relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so," Tenn. Code Ann. § 36-5-121(i)(11), most of the factors relate to the relative financial situations of the parties and their ability to improve those situations.

The statutory factors to be considered include the relative earning capacity, obligations, needs, and financial resources of each party; the relative education and training of each party; the ability and opportunity and necessity of each party to secure such education and training in order to improve such party's earning capacity to a reasonable level; and the assets of each party, whether they be separate assets or marital property awarded in the divorce. Tenn. Code Ann. § 36-5-121(i). It is well settled that the two most important factors to be considered in any spousal support determination are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Bratton*, 136 S.W.3d at 604; *Robertson*, 76 S.W.3d at 342.

---

[2]Those statutory factors are:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

## III. ANALYSIS

While both parties challenge the trial court's decision regarding marital property, it is helpful to note that the disagreement is predominantly about its division and not about the trial court's designation of certain property as marital or the valuation placed on it by the trial court.

### A. Wife's Challenge

Wife challenges both the trial court's award of alimony and the division of marital property. She argues that application of the statutory considerations governing alimony and division of property yields either of the following results: (1) her preference that she receive 70% of the marital assets and $3,000 per month in alimony *in futuro*, or (2) if the court on appeal leaves the trial court's property division undisturbed, then Wife maintains she should receive $10,000 per month in alimony *in futuro*.

As a preliminary matter, we find that the trial court left Wife's needs partially unaddressed in awarding alimony while Husband had the ability to pay. The trial court failed to award Wife alimony sufficient to meet even the reduced needs of Wife as found by the trial court. Wife's stated need was $150,000 per year, which the court reduced to $106,000 as her true need. Taking into account her income from her CPA practice and reinvestments of $30,000, then $76,000 in unmet needs remained. Alimony of $3,000 per month provides only $36,000 year - leaving $40,000 in needs unmet.[3] While the trial court's order does not say that the trial court believed Wife could get a job earning $40,000 per year and still keep her practice at home and board membership that is one possible source of the $40,000 gap. In other words, Wife would be expected to have two jobs at her age to meet her reduced needs as found by the trial court, while Husband could meet his needs even while he took a job for less pay. This is not a reasonable result under these particular circumstances.

Wife also makes compelling arguments that a review of the statutory factors under Tenn. Code Ann. § 36-4-121(a)(1) governing division of marital property support an award to her of greater than 50% of the marital assets.

The marriage lasted for almost forty years. The parties were married while Husband was receiving his medical training and were partially supported by Wife during that time. Clearly, Husband's earning capacity is greater than Wife's since he was earning $216,000 a year at the time of trial and the trial court found Wife's total income from her CPA practice,

---

[3]It is true that Wife may receive some income from the marital assets distributed but so may Husband.

investments, and board participation to be $30,000 per year. The testimony was clear that the parties' decision that Wife be the homemaker allowed Husband to primarily focus on his career - *i.e.*, he worked and she did everything else, including rearing the parties' 7 children. It is not disputed that the couple was able to manage their financial affairs well due in large part to Wife's efforts and abilities.

Almost every factor in Tenn. Code Ann. § 36-4-121(c) heavily favors Wife. The marriage was of long duration, Husband is more employable and has a far greater earning capacity while Wife has unmet financial needs. While Husband was the wage earner and Wife the homemaker which Tenn. Code Ann. § 36-4-121(c)(5) is to be given the same weight, Wife handled the financial aspects of the couples' personal life and Husband's business affairs. Husband concedes that wife is the superior financial manager. Clearly, Wife's economic position is inferior to Husband's since Wife has devoted herself for almost forty years to their family, home and finances, while Husband's profession and experience put him in a better position to generate income. While Husband currently earns $216,000 per year, the evidence showed that in years past he earned much more but elected to take a path resulting in less earnings. Such a choice, however, is unavailable to Wife due both to her age (58 years) and absence of time to cultivate a career. Not only is Wife economically less advantaged, she is in that position precisely because of her contributions to their family, home, and her efforts to accumulate the marital assets. Such is true even if we credit the testimony that Wife could earn $40,000 per year as a full time CPA.

While Wife argues for more alimony, her apparent preference is a greater share of the marital assets. It is important to note that while marital property should be divided equitably, that does not mean equally. *Larsen Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010); *Smith*, 984 S.W.2d at 609. Our Supreme Court recognized in *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002), that "when feasible," trial courts are encouraged to use the division of marital property to help meet the disadvantaged spouse's needs. *See Cunningham v. Cunningham*, M2002-01659-COA-R3-CV, 2003 WL 22994291 (Tenn. Ct. App. Dec. 22, 2003). Consequently, when practical, a court should consider awarding *more* assets to an economically disadvantaged spouse to provide for future support rather than rely solely on alimony. *Robertson*, 76 S.W.3d at 341. Such would further legislative policy to, if not eliminate in this situation, at least reduce spousal dependency. *Id.*

We find under the circumstances, applying the statutory factors, that Wife is entitled to a greater amount of support. Instead of raising the amount of alimony to be paid by Husband, we think the solution suggested in *Robertson* should be applied here. The marital assets awarded Husband totaled $1,519,373.36 and the marital assets awarded Wife totaled $1,733,349.50. Consequently, the marital assets totaled $3,252,722.86, of which Wife received approximately 53% and Husband received approximately 46%. Applying the

statutory factors for property division and spousal support, we conclude that Wife is to receive an additional $300,000 in marital assets. The matter is remanded to the trial court to determine which assets will be transferred to Wife to comply with this decision or if a cash award is appropriate.

Since Wife is receiving a larger share of the marital assets, and since a factor in determining alimony under Tenn. Code Ann. § 36-5-121(i)(8) is the division of marital property, we decline to disturb the alimony award to Wife made by the trial court.[4]

## B. Husband's Challenge

We have carefully examined the arguments raised by Husband asking the appellate court to eliminate alimony and restructure the property division more favorably to him.

Husband first argues that the division of marital property unduly favored Wife. While Husband does not challenge the values assigned to the assets by the trial court, he challenges what he terms their "disparate division." Husband argues the trial court failed to take into account the consequences should he sell or receive distribution from his 401-K ($10,718 or sell his professional corporation ($237,514) - both of which were awarded to him. Wife on the other hand, had a Roth IRA ($220,000) so that there are no tax consequences from its distributions. According to Husband, had the trial court taken the consequences into account, the value of these accounts would be reduced. We do not find the trial court erred. As stated earlier, the trial court's task is to divide the marital property equitably, and we find no basis for finding the court's distribution inequitable.

Second, Husband argues that due to Wife's acknowledged ability to manage money and his admitted inability to do so, Wife is clearly more able to make future acquisitions of cash and income. This argument begs the question entirely. It is clear in the record that Husband has a far greater earning capacity than Wife. His inability to manage the money the parties accumulated during the marriage should not diminish the award to her. Presumably, Husband can obtain able financial management. Wife, on the other hand, is not in the position to replace Husband's earning capacity.

Husband also argues that the trial court erred in any award of alimony to Wife. According to Husband, Wife can maintain her standard of living through her earnings and investment of the assets awarded her by the trial court. In addition, Husband reaffirms his

---

[4]Wife also argues that Husband dissipated marital assets by, among other things, renovating his condominium. It does not appear that Husband was attempting to use marital property frivolously and without justification amounting to dissolution as described in *Altman v. Altman*, 181 S.W.2d 676, 681-83 (Tenn. Ct. App. 2005).

desire to retire. Given the earning capacity and needs of the parties, together with the award to Wife additional marital assets, alimony of $3,000 per month until she reaches the age of sixty-six is reasonable and will not be disturbed.

The trial court order is affirmed with the exception that Wife shall be awarded an additional $300,000 in marital assets. The matter is remanded to the trial court to make the determination of which assets shall be applied to satisfy this additional award or if a cash payment is more appropriate. Cost of appeal are assessed against the appellee, Rex Hubbard for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, P.J., M.S.