IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 20, 2019 Session

DANA DARNELL v. MARK DARNELL

Appeal from the Chancery Court for Bradley County
No. 2017-CV-271    Jerri S. Bryant, Chancellor

————————————————————

No. E2018-02007-COA-R3-CV

————————————————————

This appeal arose from the parties' divorce proceedings.  After approximately five years of marriage, Dana Darnell ("Wife") filed a complaint in September 2017 with the Bradley County Chancery Court ("Trial Court"), seeking a divorce from Mark Darnell ("Husband").  Following trial, the Trial Court granted the parties a divorce, classified the parties' property, and divided the marital property and debts.  Determining that Wife's savings account should have been classified as marital property due to commingling, we reverse the trial court's classification that such account was Wife's separate property and award Husband one-half of the funds in Wife's savings account.  We affirm the Trial Court's distribution of the remaining marital assets.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed, in Part, and Modified, in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and THOMAS R. FRIERSON, II, JJ., joined.

Stephen M. Hatchett, Athens, Tennessee, for the appellant, Mark Darnell.

Randy Sellers, Cleveland, Tennessee, for the appellee, Dana Darnell.

OPINION

Background

Wife was awarded a piece of real property during a previous divorce proceeding with her former husband.  Wife was given three years to refinance the mortgage or sell the property.  If Wife did not refinance or sell the property within those three years, the

property could be sold at an auction. As the three year deadline approached, Wife was in college and was unable to refinance the home. Husband and Wife became engaged after dating for approximately one year. Husband then offered to purchase Wife's home from her and her former husband for the amount of the existing mortgage. Husband purchased the home on September 26, 2012. At the time Husband purchased the home, it was worth $269,000, but the cost to Husband was only $134,000, which consisted of the existing $120,000 mortgage on the home and closing costs.

Husband and Wife were married less than a month later on October 13, 2012. On September 23, 2013, Husband executed a deed conveying to Wife a one-half undivided interest in the marital residence. Prior to the marriage, Wife had approximately $30,000 in a bank account. Husband had a retirement account prior to the marriage that continued to accrue during the marriage. When the parties married, Wife was in college. However, she later became a teacher with an annual income of $36,000. During the marriage, Husband was employed by the Cleveland Police Department with an annual salary between $50,000 and $60,000.

Wife filed a complaint for divorce with the Trial Court on September 25, 2017. In her petition, Wife alleged as grounds for divorce that the parties had irreconcilable differences or, alternatively, that Husband had committed inappropriate marital conduct. Husband filed an answer to Wife's complaint agreeing that Husband and Wife had irreconcilable differences but denying any inappropriate marital conduct on his part. Husband further filed a counter-complaint seeking a divorce on the ground of irreconcilable differences or, alternatively, on the grounds of inappropriate marital conduct or indignities to the spouse's person. Husband also requested a mutual restraining order between the parties.

The Trial Court conducted a trial on June 19, 2018. Upon stipulation of the parties to grounds for divorce, the Trial Court declared the parties divorced pursuant to Tennessee Code Annotated § 36-4-129. At the beginning of trial, Husband's attorney presented a "master asset list" to the Trial Court which included division of certain items of property of which the parties had mutually agreed.[1]

Based upon the parties' agreement, the Trial Court found that the home Husband had inherited from his father would be Husband's separate property, as well as his mother's iron skillet. The Trial Court further found, consistent with the parties' agreement, that Husband be awarded the 2003 Chevy S-10 pick-up truck, 2010 Mercedes, 2007 Ford Mustang, Tennessee Valley Federal Credit Union checking and savings account in his name, weedeater, leaf blower, and extension ladder as his portion of the marital estate. Similarly, the Trial Court awarded to Wife as her portion of the

---

[1] The master asset list presented to the Trial Court by Husband's counsel was not included in the record on appeal.

marital property, per the parties' agreement, the 2014 Lexus, 1990 Ford Taurus, Southern Heritage Bank checking account in her name, lawnmower, and all other household items in her possession at the time of the divorce.

The Trial Court awarded to Husband as his separate property the value of his TCRS retirement account that had accrued prior to the marriage. The parties stipulated that the retirement account had a total value of approximately $118,000 as of June 2016. However, no value was determined for the marital portion of the retirement account. The Trial Court found that a certified public accountant had been employed to calculate the value of the marital portion of Husband's retirement account. As such, the Trial Court determined that once that value was calculated, the marital portion of the retirement account would be divided equally between Husband and Wife.

The parties agreed that Wife would be awarded the marital home, as well as the remaining mortgage debt on the home. The parties stipulate that at the time of divorce, the value of the marital home remained $269,000, and the mortgage balance was $72,000. The parties disagreed, however, as to how the marital home's equity was to be divided between the parties. The parties agree that during that marriage, Husband paid the mortgage out of his marital income and that Wife paid other household bills out of her marital income. Wife's name was never added to the mortgage. The parties further stipulate that there were no significant improvements to the home during the marriage. Wife testified that when Husband purchased the home, Husband told her the house was her retirement because he already had a retirement account. Husband testified that he purchased the home from Wife and her former husband to protect her so that she and her children would not have to move from the home.

The parties also disagreed on whether Wife's savings account which had remained in her name throughout the marriage was separate or marital property. The parties stipulate that the savings account had a balance of $30,000 at the time of the marriage and that Wife had placed marital funds into the account during the marriage before removing funds from the account to purchase, among other things, a 2014 Lexus for $26,000. At the time of the parties' divorce, the savings account in Wife's name had a balance of $20,000. Wife further testified that she had placed money in the account from her teacher's salary and that when she took money out of the account, she put money back in, keeping the balance about the same.

Following trial, the trial court entered an order classifying the parties' property and making an equitable division of the marital assets. The Trial Court found that Wife's savings account was her separate property. In its order, the Trial Court further found as follows regarding the marital home:

> As to the real property of the parties, the Court finds that as an equitable division of this property the Court has determined that the marital equity of

the parties in and to the property is $63,000.00 and therefore, Husband is awarded one-half (1/2) of such or $31,500.00 as his interest in the real property located at . . . Cleveland TN 37323. The remaining equity in such is awarded to Wife as her separate property. Husband shall execute a Quitclaim Deed to such evidencing this transfer upon the entry of a Final Decree of Divorce. The issue of payment of such is reserved until the marital value of Husband's TCRS account is determined.

Subsequently, Husband filed a motion to alter or amend, contending, *inter alia*, that the savings account awarded to Wife as her separate property should be classified as marital property and that the total amount of equity from the marital home should be equally divided between Husband and Wife. Following a hearing on Husband's motion to alter or amend, the Trial Court found as follows:

As to the savings account, it was stipulated that [Wife's] savings account was hers prior to the marriage and it remained in her name both during and after the marriage. While she may have placed some monies into the account during the marriage, all of that money was spent, according to her testimony. The account held less money at the time of the divorce than at the time of the marriage. The Court held that account was a pre-marital asset of [Wife] and retained the same value, both at the time of the marriage and at the time of the divorce and therefore remained her separate property. The motion to alter or amend on that issue is DENIED. Both parties kept their finances separate during this marriage. Both parties purchased their own automobiles and maintained their own separate accounts. [Husband] testified he paid the house payment and [Wife] paid the parties' other expenses. Those facts impact not only the savings account, but also the home.

As to the parties' home, the facts are not in dispute. The parties executed a "sale" in an effort to get the financing of [Wife's] pre-marital home and her separate property off of her former husband's credit. The transaction between [Wife] and [Husband] was not an arm's length transaction. It was between these two parties who intended to marry. [Husband] wants the parties to be put back to where they were prior to the marriage. Prior to the marriage, [Wife] had a house with $149,000 in equity. The payoff on the house was $120,000 and it appears there was an additional $14,000 in costs associated with that refinance and mortgage. [Husband] "purchased" the home in an effort to protect [Wife]. After making house payments during the marriage, there appears to be $72,000 left on the note on the home, creating current equity of $197,000. This additional equity was created by [Husband] making house payments. [Husband] received a place to live. Between his purchase of the home and

- 4 -

the divorce, [Husband] put the house in both parties' names as tenants by the entirety and created a transmutation of all the equity. [Husband] paid $62,000 on the house during the parties' marriage.

[Husband] is not just asking to be returned to the same position he was in at the time the parties married but is asking for $197,000 in equity to be divided between the parties. The Court finds that would be fundamentally unfair or inequitable in this situation in that [Husband] only paid $62,000 on the home during the marriage, that he received a place to live during the marriage, and [Wife] had a home with approximately $149,000 in equity just before agreeing to marry him. Further, [Wife] paid other marital bills. There is no proof [Wife] was being forced to sell the property. The Court previously found there was net equity in the home, at the time of the marriage of $149,000 and net equity at the time of the divorce of $197,000. Since [Wife] paid the parties' other marital debts, it is equitable for her to receive one-half of the net equity of this home.

(Paragraph numbering omitted.) The Trial Court, therefore, denied Husband's motion to alter or amend. Husband timely appealed.

## Discussion

Although not stated exactly as such, Husband raises the following issues for our review on appeal: (1) Whether the Trial Court erred by classifying Wife's savings account as Wife's separate property, and (2) Whether the Trial Court erred in its distribution of the marital assets.

Our review is de novo upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). Insofar as the issues call for review of discretionary decisions, we apply the abuse of discretion standard. "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).

First, we note that Husband failed to include a sufficient table of property with his appellate brief in compliance with Tennessee Court of Appeals Rule 7, which provides:

(a) In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This table shall list all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts.

(b) Each entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court's decision regarding the classification, valuation, division, or allocation of the property or debt can be found.

(c) If counsel disagrees with any entry in the opposing counsel's table, counsel must include in his or her brief, or in a reply brief if the issue was raised by opposing counsel after counsel filed his or her initial brief, a similar table containing counsel's version of the facts.

In this case, although Husband included a property table with his appellate brief, it does not comply with the requirements of Rule 7. Husband has not listed all the separate and marital property or their values in his table. In his property table, Husband listed no separate property, no values for the separate property, or citations to the record for such property. Additionally, Husband includes only the marital home, the marital home's equity, the marital portion of his retirement account, and Wife's savings account as marital property in the table. He includes values and citations to the record regarding this property in his table but includes an incorrect value for Wife's savings account. Husband lists Wife's savings account at $26,000 when the only evidence in the record reflects Wife's account had a $20,000 balance at the time of the divorce. Husband completely excludes several items of marital property and their values, including five vehicles, their respective checking and savings accounts that the trial court found was marital property, a weedeater, a leaf blower, an extension ladder, and a lawnmower.

A Rule 7 table is especially important because, in the final analysis, what we are concerned with as to property division is the overall division of the entire marital estate and whether that overall division is equitable. Although Husband has claimed no error with regard to the excluded property, this Court reviews the entire distribution of property when reviewing whether a trial court's distribution of the marital property is equitable. We recognize that the Trial Court, understandably, did not include valuations of the agreed to property in its final divorce decree. However, the fact that the Trial Court did not assign values to all pieces of property does not prohibit Husband from providing values in his table with citations to the record supporting his assertions. *See Harden v.*

*Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688, at *8 (Tenn. Ct. App. June 30, 2010). We further note that despite the deficiencies in Husband's Rule 7 table, Wife did not include a property table in her brief. *See* Tenn. Ct. App. R. 7(c) ("If counsel disagrees with any entry in the opposing counsel's table, counsel must include in his or her brief . . . a similar table containing counsel's version of the facts."). Thus, Wife has in essence accepted Husband's deficient property table.

This Court has held that an appellant's failure to comply with Rule 7 can result in the appellant's waiver of all issues relating to the rule's requirements. *Id.* Despite the deficiencies in Husband's Rule 7 table, we will attempt to "soldier on" to address the merits of Husband's appeal. *See Franks v. Franks*, No. W2014-00429-COA-R3-CV, 2015 WL 58913, at *6 n.8 (Tenn. Ct. App. Jan. 2, 2015); *see also In re Jada C.H.*, No. W2011-02542-COA-R3-JV, 2012 WL 4086120, at *6 (Tenn. Ct. App. Sept. 18, 2012) ("This Court has previously held that it may choose to 'soldier on' to decide the merits of a case when either the trial court or parties fail to follow the rules of this Court." (internal citations omitted)).

Next, we consider whether the Trial Court erred in classifying Wife's savings account in her name as separate property. In pertinent part, Tennessee Code Annotated § 36-4-121(b)(2) defines separate property as:

(A) All real and personal property owned by a spouse before marriage . . . ;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent;

(E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and

(F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tennessee Code Annotated § 36-4-121(b)(1) further defines marital property as follows:

(1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the

course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . ;

(B)(i) "Marital property" includes income from, and any increase in the value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation;

* * *

(D) As used in this subsection (b), "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine;

"Whether a spouse made a 'substantial contribution' to the preservation and appreciation of separate property is a question of fact, and as such, 'we are disinclined to disturb the trial court's decision' unless the trial court's findings 'lack[ ] proper evidentiary support or result[ ] from some error of law or misapplication of statutory requirements and procedures.'" *Keyt v. Keyt*, 244 S.W.3d 321, 332 (Tenn. 2007) (quoting *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)).

Our Supreme Court discussed the concepts of marital property and separate property in *Langschmidt v. Langschmidt* and noted that in addition to the statutory provisions contained in Tenn. Code Ann. § 36-4-121(b), Tennessee intermediate appellate courts have recognized two methods by which separate property may be converted into marital property. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002). These two methods are commingling and transmutation, which the Supreme Court noted have been described by this Court as follows:

[S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur. . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or

communications clearly indicating an intent that the property remain separate.

*Langschmidt*, 81 S.W.3d at 747 (citations omitted).

We now address whether the Trial Court erred by finding Wife's savings account to be separate property. The parties stipulate that Wife's savings account remained in solely her name for the duration of the marriage. Both Husband and Wife maintained separate savings accounts during the marriage. The parties agree that prior to the marriage, Wife's savings account had a balance of $30,000. The parties stipulated that during the marriage, Wife's savings account "started at thirty and went up to where she could buy a 26,000-dollar Lexus and it's now at twenty." Neither party disputes that Wife purchased the 2014 Lexus for $26,000 with funds from the savings account and that Wife's savings account had a balance of $20,000 at the time of the divorce proceedings. Wife testified that the balance of the account stayed consistent throughout the marriage. According to Wife, "as [she] took money out, [she] put money back in, so it stayed about the same." Wife testified that the money she added to the savings account originated from her salary as a teacher that she received during the marriage.

The Trial Court found that Wife had placed money into her account during the marriage but found that all that money had been spent according to Wife's testimony. Finding that Wife's account held less money at the time of the divorce than at the time of the marriage, the Trial Court classified the savings account as separate property.

There is no accounting in the record of the money going in or coming out of Wife's savings account other than the stipulations of the parties and Wife's testimony. Wife added marital funds to the account before purchasing a 2014 Lexus for $26,000 and ultimately ending up with $20,000 remaining in her savings account. The Trial Court classified the 2014 Lexus as marital property. Wife testified that during the marriage, whenever she withdrew money from the account, she would place money in the account keeping the account balance "about the same." Wife placed money from her teaching salary, which was marital funds, into the savings account. During her testimony, Wife does not state how many times she had withdrawn money from the account or placed marital funds back into the account or the amounts of these withdrawals or deposits.

Husband contends that Wife deposited her teaching income into the savings account and withdrew money from the account during the marriage, and as such, the money in the account had become inextricably mixed with marital property. Wife claims that Wife's savings account "remain[ed] titled in her separate name and segregated and thus is not inextricably mixed." We agree with Husband on this issue. We find and hold that Wife's savings account had become inextricably mingled with marital property. Thus, a rebuttable presumption of a gift to the marital estate was created, and that presumption was not rebutted by Wife.

- 9 -

We find and hold that Wife's savings account had become marital property and was subject to distribution with the marital estate. As such, we modify the Trial Court's judgment to reflect that Wife's savings account is marital property, not Wife's separate property, and award one-half of the savings account (i.e. $10,000) at the time of trial to Husband.

We next consider whether the Trial Court's division of marital property was inequitable and an abuse of discretion. A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, when dividing marital property:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163,] at 168 [(Tenn. Ct. App. 1994)]. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

*King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (quoting *Roseberry v. Roseberry*, No. 03A01-9706-CH-00237, 1998 WL 47944, at *4 (Tenn. Ct. App. Feb. 9, 1998)).

Courts must look to Tennessee Code Annotated § 36-4-121(c) when determining how to distribute marital property in a divorce. In pertinent part, Tennessee Code Annotated § 36-4-121(c) provides:

> (c) In making equitable division of marital property, the court shall consider all relevant factors including:
>
> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable. Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence;

(11) The amount of social security benefits available to each spouse; and

(12) Such other factors as are necessary to consider the equities between the parties.

Furthermore, "[i]n cases involving a marriage of relatively short duration, it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place." *Batson*

- 11 -

*v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). In *Batson*, this Court found that a marriage of a little over five years was a marriage of relatively short duration. *Id.* at 859-60. Here, the marriage also is of a relatively short duration.

In this case, the Trial Court awarded to Husband as his separate property an iron skillet from his mother and a house he and his brother inherited from his father. As Wife's separate property, the Trial Court awarded to Wife her "pre-marital savings account." However, as we have already determined, the Trial Court erred in classifying this account as separate property, and thus, it should have been included in the overall distribution of marital assets.

The parties agreed on the distribution of a majority of the marital property. In dividing the marital property, the Trial Court awarded to Husband his checking and savings account in his name, a 2003 Chevy S-10 pick-up truck, a 2010 Mercedes, a 2007 Ford Mustang, a weedeater, a leaf blower, and an extension ladder. As to Wife, the Trial Court awarded her, as part of the distribution of marital property, a 2014 Lexus, a "1990 plus" Ford Taurus, Wife's checking account in her own name, a lawnmower, and all other household items in her possession.

The parties agreed that Wife would be awarded the marital home and the debt thereon; however, the parties disagreed to the distribution of the equity in the home. As to the marital home, the Trial Court calculated the "marital equity" of the home as being $63,000, which represented the equity acquired throughout the marriage. The Trial Court equally divided the marital equity and awarded Husband half of the marital equity amounting to $31,500. The Trial Court award to Wife the remaining equity in the home, totaling $165,500, which included $134,000 of the pre-marital equity in addition to Wife's one-half portion of the marital equity of $31,500.

The Trial Court found that it would have been "fundamentally unfair or inequitable" for Husband to receive half of the total equity in the home, which totaled $197,000 at the time of the divorce when Husband paid only $62,000 toward the home during the marriage.[2] According to the Trial Court, Wife had $149,000 of equity in the home prior to agreeing to marry Husband. As the three-year deadline for Wife to refinance or sell the home approached, Wife was a student and was unable to refinance the home in her name. Husband proposed marriage to Wife and agreed to purchase the home for the existing mortgage amount of $120,000 plus closing costs even though the home was valued at $269,000 at that time. Husband stated that he did this to "protect" Wife. Wife transferred ownership of the home to Husband one month prior to her

---

[2] Husband claimed in his motion to alter or amend that he paid $95,000 toward the property but did not present proof reflecting that amount during the June 19, 2018 divorce hearing. As such, the Trial Court declined to allow Husband to present further evidence after the Trial Court's judgment.

marriage to Husband. Approximately a year later, Husband transferred a one-half, undivided ownership in the property back to Wife.

As instructed in *Batson*, this is a short term marriage, which instructs that the parties should "be restored to their pre-marriage financial condition . . . ." *Batson*, 769 S.W.2d at 859. Prior to the marriage, Wife had approximately $149,000 of equity in the marital home. Husband purchased the home for only the mortgage amount, which was significantly lower than the actual value of the home. Prior to becoming engaged to Wife and purchasing the home for the amount of the mortgage, Husband had zero interest in the home. During the marriage, Husband paid the mortgage with marital funds. The Trial Court found that Wife had paid other household expenses during the marriage with marital funds. Husband is leaving the marriage with $31,500 in equity from the home, which is more than he had prior to proposing to Wife and taking over the mortgage on the marital home. Wife is leaving the marriage with $165,500 of equity in the home, more than the $149,000 in equity she possessed prior to the marriage. As found by the Trial Court, both parties also had the home as "a place to live during the marriage . . . ."

The Trial Court's distribution of the marital property, as modified by this Court, has placed the parties, as best possible, in similar situations to where they were prior to the marriage. In fact, we note that both parties apparently will be in somewhat better financial positions than they were before their marriage. Upon a thorough review of the record, we find and hold the Trial Court's division of the marital property, as modified by this Court, to be equitable.

## Conclusion

The judgment of the Trial Court is affirmed in part and modified in part. This cause is remanded to the Trial Court to enter an order awarding Mark Darnell $10,000 of Dana Darnell's savings account as of the date of the trial as part of the equitable division of the marital estate and for collection of the costs assessed below. The costs incurred on appeal are assessed one-half against the appellant, Mark Darnell, and his surety, if any, and one-half against the appellee, Dana Darnell, and her surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE