IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 27, 2021 Session

## STACY RENEE LOFTON v. JAMES WARREN LOFTON

**Appeal from the Chancery Court for Obion County**
**No. 34132     W. Michael Maloan, Chancellor**

———————————————————

### No. W2020-01349-COA-R3-CV

———————————————————

This is a divorce case.  On appeal, the husband raises issues about the trial court's property division and spousal support award.  We generally affirm the trial court's judgment.  For the reasons discussed herein, however, we vacate the trial court's partition of Husband's railroad retirement pension benefits, not because of any error with the intended disposition, but for the entry of an order that is fully compliant with 20 C.F.R. § 295.3.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Ryan L. Hall and Heather C. Grewe, Milan, Tennessee, for the appellant, James Warren Lofton.

David L. Hamblen, Union City, Tennessee, for the appellee, Stacy Renee Lofton.

### MEMORANDUM OPINION[1]

        This appeal stems from divorce proceedings between Stacy Lofton ("Wife") and James Lofton ("Husband"), parties who remarried on December 28, 2009.[2]   Litigation

———————————

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

        This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] According to Husband's brief, the parties had previously been married to one another before the marriage at issue.  That prior marriage, Husband claimed, ended in September 2009.  Wife's testimony at

commenced on September 10, 2019, when Wife filed a complaint for divorce in the Obion County Chancery Court ("the trial court") alleging that irreconcilable differences had arisen between the parties and that Husband was guilty of inappropriate marital conduct. As part of her complaint, Wife averred that she was economically disadvantaged, was on Social Security disability, and was in need of alimony. Husband filed an answer and counterclaim, admitting irreconcilable differences existed and contending that both parties had engaged in inappropriate marital conduct. Wife later filed an answer to Husband's counterclaim and denied that she was guilty of inappropriate marital conduct.

On February 3, 2020, the trial court entered an order granting Wife a divorce on the ground of inappropriate marital conduct. In connection with its entry of the final decree of divorce, the trial court noted that the parties had "separated and divided their household and personal property" and, as to other specific property then unresolved, awarded Wife a 2006 Chevrolet truck and a television and awarded Husband a lawn mower. The court's order further indicated that the parties had agreed to pay their respective credit card debt, and Husband was ordered to be responsible for a federal tax liability. The future proceeds from the sale of the parties' marital residence were to be equally divided.

As for Husband's work-related retirement benefits and savings plan, the trial court noted that Husband had worked for the railroad for sixteen years and that the parties had been married for ten years. The court awarded Wife 33% of Husband's work savings plan account, the account he had labeled as his "Railroad 401k." With respect to Husband's railroad retirement pension benefit, the trial court noted that "Tier I" benefits were not subject to division.[3] However, the trial court awarded Wife 33% of Husband's "Tier II" railroad retirement pension benefits accumulated as of January 3, 2020.

Concerning the issue of Wife's request for alimony, the trial court determined that Wife had established a need for support, that Husband had the ability to pay support, and that Wife was economically disadvantaged and not subject to rehabilitation. In light of these findings, the court ultimately determined that it was appropriate for Husband to pay Wife $1,000.00 per month as alimony in futuro. This monthly amount was the same as Husband's previously-set temporary spousal support obligation.

Husband filed a motion to alter or amend the trial court's order on March 3, 2020, and that motion was later adjudicated by way of an order entered on August 31, 2020. In a letter ruling attached to its August 31 order, the court reiterated its decision to award Wife alimony and explained that its decision followed a consideration of the factors in Tennessee Code Annotated section 36-5-121. Regarding Wife's need, the trial court observed that

---

trial aligned with Husband's statements on appeal. According to the "Statement of Evidence" entered by the trial court, "[Wife] testified the parties had been previously married for five years, but divorced in September, 2009."

[3] Although not specifically cited by the trial court, the court was ostensibly relying on 45 U.S.C. § 231m of the Railroad Retirement Act.

Wife was disabled and drew less than $1,000.00 per month and "has $2,029.00 of reasonable expenses." With respect to Husband's ability to pay, the trial court took issue with the amount of payroll deductions claimed by him. In relevant part, the court held as follows:

> [Husband's] affidavit shows $3,556.75 per month in payroll deductions. This same amount is in his affidavit for the October 7, 2019 hearing. The Court previously questioned this amount as being accurate and added back into this net income voluntary 401(k) and other deductions.

Husband subsequently filed a notice of appeal in this Court on September 29, 2020.

In his brief, Husband raises two issues. First, he generally challenges the trial court's division of the parties' estate. Second, he challenges the trial court's award of alimony to Wife. With respect to Husband's first issue, we note that "[t]his Court gives great weight to the decisions of the trial court in dividing marital assets." *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). As noted earlier in this Opinion, the trial court acknowledged in its final decree of divorce that the parties had generally "separated and divided their household and personal property" and, as to other specific property then unresolved, awarded Wife a 2006 Chevrolet truck and a television and awarded Husband a lawn mower. The court's order further indicated that the parties had agreed to pay their respective credit card debts, and Husband was ordered to be responsible for a federal tax liability. The future proceeds from the sale of the parties' marital residence were to be equally divided. Wife was also awarded 33% of Husband's work savings plan account and 33% of Husband's "Tier II" railroad retirement pension benefits accumulated as of January 3, 2020. "The trial court is empowered to do what is reasonable under the circumstances and has broad discretion in the equitable division of the marital estate," *id.* at 328, and here, having reviewed the record transmitted to us on appeal, we discern no abuse of discretion in the court's overall division.

In connection with our conclusion on this matter, we find that Husband's apparent primary grievance with respect to the trial court's division—its handling of his retirement benefits—is misplaced. Husband contends that Wife is not entitled to any of his annuity railroad retirement benefits because the parties were married less than ten years at the time of trial. Respectfully, we are of the opinion that the argument Husband attempts to make conflates requirements concerning entitlement to a "divorced spouse annuity" with the issue with which the trial court dealt, i.e., the partition of Husband's benefits. The entitlement to an annuity as a divorced spouse is an entirely separate issue from a court's decision to partition an employee's benefits and is something that is not even subject to judicial resolution by a state court. Indeed, as explained in a publication prepared by the Office of General Counsel for the United States Railroad Retirement Board,

> Under the [Railroad Retirement Act] the former spouse of an

- 3 -

employee may become eligible for a divorced spouse annuity in his or her own right. . . . . [N]o state court may determine the entitlement of a person to a divorced spouse annuity. In order to be eligible for a divorced spouse annuity, the former spouse must meet certain statutory requirements[.]

United States Railroad Retirement Board Office of General Counsel, *Attorney's Guide to the Partition of Railroad Retirement Annuities* 18, rrb.gov/sites/default/files/2020-10/partition.pdf.

Although the ten-year marriage requirement referred to by Husband is a requirement for a divorced spouse annuity, *see* 20 C.F.R. § 216.52 and 20 C.F.R. § 222.22,[4] it simply is inapplicable to a court's ability to partition a railroad employee's annuity incident to a final decree of divorce. The same publication from the Railroad Retirement Board referenced above makes this clear and specifically notes that length of a marriage between parties "is not relevant as to whether the divisible components of an employee's annuity are subject to division by the court." United States Railroad Retirement Board Office of General Counsel, *Attorney's Guide to the Partition of Railroad Retirement Annuities* 17, rrb.gov/sites/default/files/2020-10/partition.pdf.

Although Husband's specific issue pertaining to the division of his railroad retirement annuity thus has no merit,[5] our review of the matter has prompted a cause for concern about the sufficiency of the trial court's order in light of the applicable federal regulation, 20 C.F.R. § 295.3, which sets forth the criteria dictating under what conditions the Railroad Retirement Board will honor a court decree or property settlement. The criteria under that regulation are as follows:

(1) The court decree or property settlement must provide that the spouse or

---

[4] As it is, even assuming the referenced ten-year requirement was somehow applicable analytically to the court's ability to partition Husband's annuity retirement benefits, which it is not, we fail to discern what issue would exist here in light of the operative language of the federal regulation ostensibly relied upon by Husband. *See* 20 C.F.R. § 222.22 ("[One qualifies as the divorced spouse of an employee if] [h]e or she had been validly married to the employee . . . **for a period of 10 years immediately before the date the divorce became final.** The claimant meets this requirement even if the claimant and employee were divorced within the ten-year period, provided that the claimant and employee were remarried no later than the calendar year immediately following the year in which the divorce took place." (emphasis added)). The most recent marriage between the parties occurred in December 2009, and the divorce was not finalized until 2020.

[5] Husband raises other concerns within his brief regarding the trial court's handling of his retirement assets, but they also are without merit. The other main criticism raised by Husband concerns the trial court's division of his work savings account, what Husband labeled as the "Railroad 401k." The argument advanced appears to be that this account may have contained "Tier I" benefits which are not divisible under the Railroad Retirement Act. Respectfully, we find that this argument misconstrues the nature of the asset at issue. The record suggests that the savings account at issue is simply that, a savings account with an accumulated money balance. In other words, this disputed asset does not involve an "annuity" subject to the requirements of the Railroad Retirement Act.

- 4 -

former spouse is awarded payments from railroad retirement annuities payable to the railroad employee.

(2) The court decree or property settlement must specify an amount to be paid to the spouse or former spouse.

(3) The court decree or property settlement **must obligate the Board to make payments directly to the spouse or former spouse**.

(4) The court decree or property settlement must clearly identify both the employee and the spouse or former spouse to whom payments are to be made.

(5) The court decree or property settlement submitted to the Board must be a recently certified copy of the document filed with the court. Where the award is made in an order modifying an[] earlier court decree, copies of both the original decree and the subsequent order must be furnished. In the case of a court-approved property settlement, both the settlement and any decree or order incorporating or approving the settlement must be provided.

20 C.F.R. § 295.3 (emphasis added). As is evident above, the court decree must, among other things, "obligate the Board to make payments directly to the spouse or former spouse." *Id.* Here, the trial court's order is noticeably deficient in this regard, as it directs Husband's employer to make an award to Wife rather than obligate the Board to make payments. The court's order is accordingly vacated on this matter, and the issue is remanded to the trial court solely for the entry of an order that satisfies the criteria in 20 C.F.R. § 295.3.[6] In no way should our vacation of the order on this issue be construed as a signal that we disagree with the intended substantive disposition. The problem that exists is merely one of drafting, and the order should simply be redrafted to be in compliance with the applicable federal regulation noted above.

We turn next to the trial court's alimony award. "There are no hard and fast rules for spousal support decisions." *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998). Moreover, "[t]rial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration." *Id.* We are "generally disinclined to second-guess a trial court's spousal support decision unless it is not

---

[6] In entering a renewed order that satisfies the criteria, the trial court should take special care in its expression of the intended award. As noted previously, the court's clear intent was to award Wife 33% of all Tier II benefits accumulated by Husband as of January 3, 2020. Specific language was included to that effect, although other language within the order stated more generally, with no other qualification, that Wife was awarded 33% of Tier II benefits. There is no question that the court intended to limit its award to 33% of Tier II benefits accumulated as of January 3, 2020, and we have interpreted the more general statements included in that context. We encourage the trial court, however, to strive to avoid any potential ambiguity in its order on remand. The Railroad Retirement Board has stressed that caution must be taken when expressing awards in terms of a percentage: "If the order provides for a percentage award but does not specify a particular point in time, the award will be based upon all railroad service throughout the employee's career, regardless of the period of the marriage." United States Railroad Retirement Board Office of General Counsel, *Attorney's Guide to the Partition of Railroad Retirement Annuities* 22, rrb.gov/sites/default/files/2020-10/partition.pdf.

supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Id.* Although there is a legislative preference for awarding transitional alimony or rehabilitative alimony as opposed to alimony in solido or alimony in futuro, *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 109 (Tenn. 2011), long-term support can be appropriate in specific cases. Alimony in futuro, which was awarded by the trial court in this case, "may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." Tenn. Code Ann. § 36-5-121(f).

The trial court found in this case that Wife was "economically disadvantaged in relation to [Husband's] earning power" and was "not subject to rehabilitation." As it later noted, she was "disabled," drew less than $1,000.00 per month, and had $2,029.00 of reasonable expenses. In light of her economic disadvantage and need, the absence of rehabilitation prospects, and Husband's resources and ability to pay, the trial court determined it was appropriate that Husband be ordered to pay $1,000.00 per month for Wife's support. As we perceive it, Husband's criticisms of this award are leveled on two principal fronts. One, Husband questions the trial court's finding with regard to rehabilitation, arguing that the "finding that Wife . . . could not be rehabilitated was an abuse of discretion." By attacking the court's finding on rehabilitation, he seeks to undermine a foundation for awarding long-term support. Husband also argues that the trial court's finding that he has the ability to pay the alimony awarded was "clearly erroneous."

With respect to the trial court's finding concerning rehabilitation and its related finding that Wife was disabled, we fail to see how the court committed an "abuse of discretion," as Husband submits,[7] by finding that she could not be rehabilitated. As it is, the record contains evidence sufficiently supporting the court's factual finding. As noted in the "Statement of Evidence" prepared by the trial court, Wife testified that she was receiving Social Security disability benefits because of injuries she sustained during a tornado that flipped the parties' mobile home three times while she sheltered in the bathtub. Wife suffered multiple injuries and underwent multiple back surgeries. Wife testified that her back injuries negatively affected her ability to sit and stand and caused tenderness to her toes, and she further testified that she had a medical restriction to lift no more than ten pounds. She testified that she had to use a pillow for comfort while driving and would periodically stop and rest during travel. According to her testimony, she was unable to become gainfully employed due to her injuries and surgeries. To the extent that the trial court appears to have accredited Wife's testimony that her lack of gainful employment at the time of trial was a result of her injuries, we find no basis to disturb the trial court's findings concerning her disability and her inability to be rehabilitated. *See Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn. 1987) ("Where the trial judge has seen

---

[7] Although the trial court's decision on alimony involves discretion, we are of the opinion that this phrasing by Husband is imprecise. The trial court's *factual* finding related to Wife's rehabilitation prospects is subject to a review concerning where the preponderance of the evidence lies. *See* Tenn. R. App. P. 13(d).

and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances.").

Although there is evidence supporting the determination that Wife has a need for support, cannot be rehabilitated, and is disabled, Husband maintains that he lacks the ability to pay the amount awarded to Wife. We disagree, and in light of our conclusion on this matter, Wife's relative economic disadvantage, and the above discussion, we discern no abuse of discretion in the trial court's award of alimony. Husband voices an alleged inability to pay, but the record reflects that the court took issue with the amount of claimed payroll deductions represented on the affidavit Husband submitted at trial. The trial court took specific issue with the deductions which were discretionary, stating in relevant part that it had "previously questioned [the total claimed deductions]" and therefore "added back into this net income voluntary 401(k) and other deductions." In short, Husband's represented inability to pay was a result of his own decision to make a number of significant voluntary deductions, such as to his retirement savings. Based on a 2019 pay stub introduced at trial, Husband's total earnings as of October 13, 2019 were $61,021.73. This equates to approximately $6,449.45 per month.[8] Eliminating consideration of the voluntary deductions with which the trial court took issue, Husband had approximately $1,560.61 in monthly taxes deducted from his paycheck, $242.00 deducted per month for medical insurance, and $348.13 deducted per month for a loan obligation. These deductions total $2,150.74, a figure that is in stark contrast to the figure claimed by Husband in light of other voluntary deductions he took. If we further take what appears to be a union dues deduction into account, which appears to average $92.21 per month,[9] Husband clearly has the ability to pay the alimony awarded to Wife even when accepting the totality of the other claimed expenses on his affidavit, which were $3,287.30. Indeed, taking the monthly earnings of $6,449.45 and subtracting the monthly taxes, medical insurance deduction, loan obligation deduction, and union dues deduction, Husband is left with $4,206.50. When you add Husband's monthly veteran's benefit in the amount of $478.87 and then subtract the claimed $3,287.30 in general expenses,[10] there is still $1,398.07 left available to Husband.

---

[8] The pay stub introduced showed total earnings approximately 41 weeks into the 2019 year. The $6,449.45 figure was derived by calculating the average weekly amount of accrued earnings, extrapolating that amount over a year, and then dividing the yearly figure into a monthly amount. This same mathematical process was utilized to derive the other average monthly amounts discussed in reference to Husband's 2019 pay stub information.

[9] Based on pay stubs introduced at a prior hearing on the issue of temporary support, it appears this monthly amount may actually be $87.25.

[10] Wife suggests that $500.00 of the claimed expenses should not be considered. The issue ultimately has no bearing on the conclusion reached herein, however, because with or without this expense, Husband has sufficient funds to pay for the ordered alimony award. We therefore need not consider the matter any further.

In light of the above discussion, the judgment of the trial court is generally affirmed, with the sole exception that we vacate the court's partition of Husband's railroad retirement *annuity* benefits solely for the entry of an order in compliance with 20 C.F.R. § 295.3. As should be evident from our prior discussion, we take no issue with the court's intended property division relative to Husband's railroad retirement annuity. Rather, the matter must simply be remanded to achieve compliance with 20 C.F.R. § 295.3, including the use of language obligating the Railroad Retirement Board, not Husband's employer, to make payments to Wife of the awarded Tier II benefits.


　　　　　　　　　　　　　　　　s/ Arnold B. Goldin
　　　　　　　　　　　　　　　ARNOLD B. GOLDIN, JUDGE