IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 22, 2024 Session

## JAMES HENRY WHITAKER, II v. VIKTORIA MOOR

**Appeal from the Chancery Court for Lincoln County**
**No. 14748, 14875     J. B. Cox, Chancellor**

_____

### No. M2022-01721-COA-R3-CV

_____

Following their divorce, a mother informed her children's father of her desire to move to Germany with the children. The father filed a petition opposing the move. The court found that the relocation was in the children's best interest and modified the permanent parenting plan accordingly. On appeal, Father contends the evidence preponderates against some of the factual findings and that the court erred in weighing the statutory best-interest factors. Because the evidence does not preponderate against the court's finding that relocation was in the children's best interest, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Benjamin Lewis, Murfreesboro, Tennessee, for the appellant, James Henry Whitaker, II.

Timothy P. Underwood, Pulaski, Tennessee, for the appellee, Viktoria Moor.

### OPINION

### I.

Viktoria Moor ("Mother") and James Henry Whitaker, II ("Father") divorced in 2018. Their final divorce decree incorporated and adopted a permanent parenting plan for their two minor children. The plan named Mother primary residential parent, granting her 221 days of parenting time and Father, 144 days. The plan also specified that they would have joint decision-making in all major areas.

Three years later, Father petitioned to modify the parenting plan based upon a material change in circumstances. He alleged that he had obtained a new job that allowed him to spend more time with the children and that Mother repeatedly violated the terms of the parenting plan. Father proposed a parenting plan that named them each joint primary residential parents and provided for equal parenting time. He also asked the court to hold Mother in criminal contempt for her alleged violations of the parenting plan. Mother responded with a counter-petition for criminal contempt and to suspend Father's parenting time. Mother alleged that Father had violated the parenting plan and that his behavior was adversely impacting the children.

While these matters were pending, Mother notified Father that she intended to relocate with the children to Germany to be near her family. *See* Tenn. Code Ann. § 36-6-108 (2021). Shortly thereafter, Father filed a petition opposing the move. *See id.* § 36-6-108(c).

At trial on the various petitions, the court heard testimony from Mother, Father, the child's paternal grandmother, and two counselors who had worked with the older child. Testimony covered many topics, but Mother's and Father's struggle to coparent and make decisions together was a focus. They argued over sharing time on the children's birthdays and whether Father received an appropriate amount of makeup parenting time when the children returned from trips to Germany with Mother. And they argued over their different conceptions of joint decision-making.

According to Mother, Father used their joint decision-making to "veto" decisions related to the children's health care. Father wanted "a second opinion" before he would agree to a child getting tonsils removed, getting glasses, or going to a consultation about braces. And, although Mother testified that the children always got flu shots while the parties were married, Father argued that Mother should have consulted him before she brought the children to get immunizations. Despite insisting on a second opinion, Father did not follow through with taking the child to medical professionals to get a second opinion himself. Because of the difficulty in obtaining Father's approval, Mother was not able to follow through on many of the recommendations of the children's doctors.

Mother also argued that Father "use[d] the veto" to prevent the children from participating in extracurricular activities. For his part, Father testified that he could not remember saying that he would refuse to allow the children to participate in extracurriculars during his parenting time, but it was possible that he did. He later admitted that he told one child that he was not going to go to practices or games during his parenting time if the child was "not showing an active interest."

As for the children's education, Father complained that Mother unilaterally made decisions without him. They initially agreed on the choice of the older child's school, which offered a virtual option during the COVID-19 pandemic. But, after the pandemic,

2

Father wanted the child to remain in a virtual school, even though that would have meant a change in schools. Citing her status as primary residential parent, Mother sent the child back to the child's assigned school for in-person learning. Father and Mother could not agree on enrolling the younger child in pre-kindergarten. The impasse resulted in the younger child spending another year in daycare.

Father and Mother also disagreed about the older child's court-ordered counseling. Father told the child's first counselor that he felt she was biased toward Mother, who had participated in a couple of the counseling sessions. So the counselor transferred the child's case to a second counselor. Although the child's second counselor testified that she told Father that both parents were welcome to attend the sessions, Father accused her of "implicit bias" too.

The second counselor explained that both parents read her counseling notes and requested that she include more details about things the child said about the other parent's home. She believed this stressed the child. The counselor invited the parents for an in-person session together to try to reach a resolution, but Father declined. Eventually, the counselor sent identical letters to both parents, explaining that the child felt "in the middle" and admonishing them that her "counseling relationship with [the child] cannot serve as a reporting tool for a potential conflict between the two of you." She suggested that the parents continue to work on improving their coparenting relationship, and she closed the case.

Father also complained that Mother did not give him enough information about the babysitters she used during her parenting time. Mother withheld the babysitters' addresses and phone numbers because she believed that Father had previously caused a babysitter to stop returning her calls. Father had once sent police to do a welfare check on the children while they were with a different babysitter. As Father explained the incident, he requested the welfare check due to concerns over a bruise on one child's arm and Mother's failure to respond to his text messages. Mother attributed the bruise to the child's use of a trampoline, and in Mother's view, Father was acting out because she did not respond quickly enough to his text messages.

Mother and Father also told different stories about two occasions when Mother took one of the children with her to work because of a lack of childcare. Mother testified that, on the first occasion, police officers came to her place of work and showed her a report Father had filed stating that she left the child unattended in the break room. The second time, Father called in a complaint to the ethics hotline for Mother's employer that was sent to her manager. And the paternal grandmother called the employer and threatened to sue them. Mother felt like Father was trying to get her arrested or fired. But, according to Father and the grandmother, they called just to get information about the employer's policies.

Mother explained that she wanted to relocate with the children to Germany to be near her family. The children had dual citizenship, and according to Mother, they spoke German at her house. They had visited Germany on multiple extended trips allowed under the current parenting plan. In Germany, Mother planned to live rent-free in her brother's lower-level apartment. She had signed a work contract guaranteeing employment upon relocation. She believed she would have fewer expenses because the children would get universal health care and her family would be able to help with childcare.

Despite the co-parenting challenges, Mother testified that she had always promoted a good relationship between the children and Father. If her relocation was approved, she was willing to bring the children to the United States during school breaks and encourage weekly calls with Father. For their part, Father and the grandmother testified that they did not know if Mother was a good mother. Father did not believe the children were fluent in German. And he did not know if Mother loved the children.

The court determined that relocation was in the children's best interest. It found that "Mother ha[d] consistently tried to co-parent with Father," but "[F]ather ha[d] consistently made the mother's parenting more difficult." And "it [was] against the children's best interests to be continually exposed to" Father's and the grandmother's efforts to thwart Mother's parenting.

The court adopted a modified parenting plan based on Mother's relocation with the children to Germany. *See* Tenn. Code Ann. § 36-6-108(c)(3). It vested Mother with sole decision-making and substantially reduced Father's parenting time. Father was granted parenting time with the children during the summer, half of Christmas break, and all of fall break, with Mother to be responsible for the children's travel expenses. The court also ordered a minimum of four calls per week between the children and Father. Finally, the court denied both petitions for criminal contempt.

## II.

Father argues that the trial court erred in granting the relocation. Because this was a nonjury trial, we review the trial court's findings of fact de novo on the record with a presumption of correctness, unless the evidence preponderates otherwise. *See* TENN. R. APP. P. 13(d). We review its conclusions of law de novo with no such presumption. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006).

## A.

Under the parental relocation statute, if relocation by one parent "outside the state or more than fifty (50) miles from the other parent within the state" is opposed by the other parent, the court must "determine whether relocation is in the best interest of the minor child." Tenn. Code Ann. § 36-6-108(a), (c)(1). The best interest determination is a

4

question of fact, which the court makes based on statutory factors. *Calleja v. Bradfield*, No. E2022-01074-COA-R3-JV, 2024 WL 1655980, at \*3 (Tenn. Ct. App. Apr. 17, 2024); Tenn. Code Ann. § 36-6-108(c)(2). Father argues that the evidence preponderates against several of the trial court's factual findings related to these factors.

The court found that Mother "has a stronger relationship with the children than [Father] does." *See* Tenn. Code Ann. § 36-6-108(c)(2)(A). And it found that Father exhibited a "bias against Mother, which has been modeled in front of the children in Father's household [and] has had a negative effect upon them." *See id.* Father submits that there was no proof that the children had a stronger relationship with either parent; testimony by the older child's counselors demonstrated that the child wanted to spend time with both parents; and both parents struggled to coparent with the other.[1]

The evidence does not preponderate against these factual findings. Mother had been primary residential parent since the divorce and had more parenting time with the children. She took the children to the doctor, counselors, and on trips to see family in Germany. By contrast, Father "often stalled Mother" in decision-making, "condoned his mother speaking negatively about Mother in front of the children," and "ha[d] attempted to get Mother fired from her job." Mother testified to the negative effects of Father's behavior.

The court also made several findings related to the move to Germany. Among those, it determined that Mother's "family is willing and available to assist Mother should the Court allow the relocation." *See id.* § 36-6-108(c)(2)(B). It found that the children speak German in Mother's home. *See id.* And they "could cope with the changes that German schooling might bring" and would have greater opportunity to engage in extra-curricular activities" in Germany. *See id.* Father intimates that these findings were improper because neither the children nor Mother's family members testified at trial. He also points to his own testimony. He testified that the children "knew some words" but did not speak fluent German. He suggests his testimony was corroborated by the counselor's notes.

The evidence does not preponderate against these factual findings either. In making its findings, the court credited Mother's testimony about the help she would receive from her family, the opportunities that would be available to the children in Germany, and the children's ability to adapt. Although hearing directly from Mother's family would have been further, and perhaps better, evidence on some points, "the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court." *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). As for the conflicting testimony about the children's ability to speak German, the court impliedly credited Mother's testimony over that of Father. *See Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733-34 (Tenn. 2002)

---

[1] Father also contends that the court's finding that "Mother's whole family is in Germany, the place she chose to move away from in order to be with Father and have children" improperly implied force or coercion on his part. We discern nothing improper in the finding nor any implication of force or coercion.

(recognizing that "findings with respect to credibility and the weight of the evidence . . . may be inferred from the manner in which the trial court resolves conflicts in the testimony and decides the case"). Where a factual finding turns on a question of credibility, we accord the finding "considerable deference." *Keyt*, 244 S.W.3d at 327.

Father also complains that "the trial court took into account the children's 'desire' to move to Germany," even though a child's preference is only considered if the child is 12 years old or older. *See* Tenn. Code Ann. § 36-6-108(c)(2)(D). Based on testimony, the trial court made a finding that "[t]he children have indicated that they desire to move to Germany." But the court did not apply that factual finding to its analysis of the children's best interest; it concluded that the children's preference was not applicable. So we discern no error.

B.

Father complains that the trial court also misapplied several of the best-interest factors. He believes that, were the factors weighed differently, they would not favor relocation. Specifically, he contends that the court incorrectly weighed two factors in Mother's favor. He contends that one factor the court did not weigh in favor of either party should have weighed in his favor, and he contends that another factor "should weigh more heavily" in his favor.

Factor (E) considers whether the parent seeking relocation has established a pattern of behavior "either to promote or thwart the relationship of the child and the nonrelocating parent." *Id.* § 36-6-108(c)(2)(E). In Father's view, the trial court overlooked evidence that reflected negatively on Mother. But the court did address Mother's faults: it found that both parents could not effectively co-parent. Still, it determined that there was "a pattern of conduct by Mother to make sure that Father maintains a relationship with the children." She "always went to [Father] for input about decisions and if no agreement was reached did not go forward with the decision."

Factor (F) examines whether the relocation "will enhance the general quality of life for both the relocating parent and the child." *Id.* § 36-6-108(c)(2)(F). The court determined that this factor "carrie[d] little weight in this case" but did favor relocation. Father claims that the record contains no proof that relocation would benefit the children "in any meaningful way." But the court found that, in Germany, Mother would have family support, free health care for the children, and a place to live in her brother's house. And the children would have "a greater opportunity to be fully bilingual and be exposed to more extended family."[2]

---

[2] Father suggests that the older child "would struggle more emotionally" after the move to another country. But he does not cite to evidence in the record supporting this fact. *See* TENN. R. CT. APP. 6(a)(4).

Factor (G) reviews "[t]he reasons of each parent for seeking or opposing the relocation." *Id.* § 36-6-108(c)(2)(G). The trial court determined that each parent had clear reasons for seeking or opposing the relocation. Father argues that the trial court erred because, while there was "no doubt relocating would benefit Mother," there was less proof that it would benefit the children. Father misconstrues this factor. It examines the motives behind a parent's position on a proposed relocation, not the impact on the child. Here, both parents had acceptable reasons for their positions.

Finally, factor (C) evaluates "[t]he feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties." *Id.* § 36-6-108(c)(2)(C). While the trial court concluded that this factor weighed against relocation, Father suggests that factor (C) "should weigh most heavily on the trial court" because of "the statutory directive to maximize parenting time with both parents." A "custody arrangement that permits both parents to enjoy the maximum participation possible" in the child's life is a goal in proceedings that require custody determinations. *See id.* § 36-6-106(a) (Supp. 2024). However, the "overarching" standard remains the best interest of the child. *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013); *Flynn v. Stephenson*, No. E2019-00095-COA-R3-JV, 2019 WL 4072105, at *7 (Tenn. Ct. App. Aug. 29, 2019).

Here, the court properly evaluated each of the statutory factors and determined that the relocation was in the children's best interest. Although Father's concerns surrounding the children's move are legitimate, the evidence does not preponderate against the trial court's factual findings or its ultimate determination of the children's best interest.

## C.

Both parties ask for an award of at least part of their attorney's fees on appeal. Under the parental relocation statute, "[e]ither parent . . . may recover reasonable attorney fees and other litigation expenses from the other parent in the discretion of the court." Tenn. Code Ann. § 36-6-108(f). Exercising our discretion, we decline to award either party attorney's fees on appeal.[3]

---

[3] Mother also requests an award of attorney's fees based on the frivolous appeal statute. *See* Tenn. Code Ann. § 27-1-122 (2017). She contends an award of fees is appropriate "due to the amount of billable time allocated to producing an accurate and fair record" on appeal. Although we agree that Father's efforts to prepare an appellate record led to unnecessary costs, we conclude that such costs are not recoverable under the frivolous appeal statute. The appeal was not frivolous, and Father's efforts to prepare a transcript do not appear to have been taken to delay the case. *See id.*

## III.

The evidence does not preponderate against the trial court's factual finding that Mother's relocation with the children was in their best interest.  So we affirm.

    s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE
